**Jeanne PATTERSON,**
**Plaintiff-Appellant,**

v.

**DIETZE, INC., Defendant-Appellee.**

**No. 84–1947.**

United States Court of Appeals,
Fifth Circuit.

July 8, 1985.

Kolodey, Thomas & Yeager, Tom Thomas, Lindsey Vinson, Dallas, Tex., for plaintiff-appellant.

W. Wendell Hall, Dan Matthews, San Antonio, Tex., Samuel D. Rosen, New York City, for defendant-appellee.

Before GEE, TATE and HIGGIN-BOTHAM, Circuit Judges.

GEE, Circuit Judge:

In this case, Jeanne Patterson appeals from the dismissal[1] without prejudice of her action against Dietze, Inc., for lack of personal jurisdiction of Dietze.

Jeanne Patterson is a Texas citizen. Dietze, Inc. (Dietze) is a New York corporation; it serves as a broker for the chartering of ships, primarily oil tankers. During the period relevant here, Dietze's principal place of business was New York City. Dietze is not authorized to do business in Texas, nor does it advertise in that state. It has no office, bank account, employee, agent or telephone listing in Texas. All other facts are in dispute.

Patterson, who has contacts in the Mexican government, alleges that she called Dietze in New York and offered to help Dietze get ship charters from Pemex, the Mexican national oil company. In return for her services, Patterson asked for half the commissions Dietze received from business she generated. Patterson alleges that Dietze agreed to this arrangement. In furtherance of the alleged agreement, Patterson made many telephone calls from Texas to Mexico and to Dietze in New York, and from Mexico to New York; Patterson and Dietze principals made various trips to Mexico and to the Bahamas. Dietze did get some ship charters from Pemex; two of them involved Texas shipowners. Patterson alleges that Dietze paid her commissions between April 1980 and July 1982 by wiring money to her bank accounts in Juarez, Mexico and El Paso.[2] Patterson transferred money sent to her foreign accounts to her Texas account. When Dietze allegedly stopped paying Patterson's commissions, she brought this action to enforce the alleged oral agreement.

Dietze moved for dismissal of the complaint on two grounds. First, it alleged that the Texas court lacked personal jurisdiction of Dietze. Second, it alleged that Patterson's claim was barred by the New York statute of frauds. The trial court granted the motion and dismissed Patterson's complaint on the first ground; from this dismissal, Patterson appeals.

The trial court concluded that it lacked personal jurisdiction of Dietze because Dietze's contacts with Texas, the forum state, were insufficient to satisfy the due process clause of the Constitution. Patterson contends that this was error.

Two requirements must be met for a federal court sitting in diversity to assert, consistent with the due process clause, jurisdiction of nonresident defendants served out of state: "(a) the nonresident must have some minimum contacts with the forum resulting from an affirmative act or acts on their [sic] part; (b) it must not be unfair or unreasonable to require the nonresidents to defend the suit in the forum state." *D.J. Investments v. Metzeler Motorcycle Tire*, 754 F.2d 542, 545 (5th Cir. 1985) (citations and footnotes omitted). When, as here, the jurisdiction sought to be asserted is "specific,"[3] that is "'arising out of or related to the defendant's contacts with the forum,' ... a court must examine the relationship among the defendant, the forum, and the litigation." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1171 (5th Cir.1985), *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, — U.S. —, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984).

The trial court was thus required to determine whether Dietze had the necessary minimum contacts with Texas as a result of affirmative acts performed in connection with the subject matter of this litigation. In making this determination, the trial court was obliged to disregard Patterson's

---

1. The defendant moved for dismissal pursuant to Rule 12(b)(2), Fed.R.Civ.P.; the trial court granted its motion.

2. According to Dietze, these payments were made by Patterson's Mexican connections.

3. Patterson explicitly disavowed any intention of seeking to assert "general jurisdiction" of Dietze.

actions, for "[t]he unilateral activities of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), *quoted in Thompson,* 755 F.2d at 1170; *accord, Helicopteros,* —— U.S. ——, 104 S.Ct. at 1873.

Patterson contends that the telephone calls Dietze made to Texas, the payments Dietze wired to Texas, and the contracts Dietze entered into with two Texas shipowners supply the necessary minimum contacts between Dietze and Texas, supporting her contention by citation to *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003 (5th Cir.1982). In *Mississippi,* this Court upheld the exercise of personal jurisdiction of a nonresident corporate defendant because "it was reasonably foreseeable that Mississippi would in fact perform a material part of its contractual obligations within the forum state." 681 F.2d at 1008. Here, by contrast, all material performance occurred in Mexico. Dietze and Patterson negotiated with Mexican officials in Mexico; the ship charters were prepared in Mexico. It cannot be said that the activities of the parties to this action were centered on Texas, further distinguishing the case from *Mississippi,* in which "Mississippi was clearly the hub of the parties' activities," 681 F.2d at 1010, and from other cases in which the nonresident defendant was required to perform at least part of his contractual obligations in the forum. *See, e.g., D.J. Investments,* 754 F.2d at 548–49; *Southwest Offset, Inc. v. Hudco Publishing Co.,* 622 F.2d 149, 152 (5th Cir.1980); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir. 1974).

*C & H Transportation Co. v. Jensen & Reynolds Construction Co.,* 719 F.2d 1267 (5th Cir.1983), *cert. denied,* —— U.S. ——,

104 S.Ct. 1930, 80 L.Ed.2d 475 (1984), is more to the point here. In *C & H,* this Court affirmed the trial court's dismissal for lack of personal jurisdiction, which the plaintiff sought to premise on a telephone call to the forum, the movement of goods through the forum, and payment mailed to the forum, citing in support *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984), which rejected as insufficient contacts extensive communication between the forum and the foreign states and the mailing of payment from the foreign to the forum state. 700 F.2d at 1029.

These cases support the trial court's dismissal of Patterson's complaint; two additional facts provide further support. The alleged agreement was made in New York, and is thus presumably governed by New York law. *See Product Promotions,* 495 F.2d at 495 and n. 20. The place of Dietze's performance, *i.e.,* payment, was its domicile, New York. *Product Promotions,* 495 F.2d at 496 n. 21.

It is clear from the foregoing that Dietze's contact with Texas rests on nothing but "the mere fortuity that the plaintiff happens to be a resident of the forum." *Product Promotions,* 495 F.2d at 497 n. 26. The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause, *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239, cannot be inferred from such a "mere fortuity." *Product Promotions,* 495 F.2d at 496 and n. 23 (citing cases).

■ Patterson contends that she could have established facts sufficient to support the exercise of jurisdiction of Dietze had she been allowed to complete discovery. This contention is meritless.[4] Patterson sought to depose the two Texas shipowners with whom Dietze contracted; inasmuch as the trial court assumed these contracts to exist, the depositions would have served no

---

**4.** Contrary to Patterson's assertion, the trial court is not required by our decision in *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), to defer ruling on a jurisdictional question until all discovery contemplated by the

plaintiff has been accomplished; rather, *Williamson* requires the trial court to provide the plaintiff an *opportunity* for discovery. 645 F.2d at 414. Patterson was clearly afforded the requisite opportunity.

useful purpose. Patterson also sought to discover all of Dietze's contacts with Texas since 1973. These contacts are irrelevant to the litigation and thus, given Patterson's reliance on specific rather than general jurisdiction, irrelevant to the jurisdictional issue in this case. Further, jurisdictional discovery is within the trial court's discretion and "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982), *quoting Associated Metals & Minerals Corp. v. S.S. Geert Howaldt,* 348 F.2d 457, 459 (5th Cir.1965). No such abuse is shown here. The trial court was thus correct in dismissing Patterson's complaint for lack of personal jurisdiction of Dietze; Dietze did not have the minimum contacts with Texas required for the assertion of such jurisdiction.[5] We therefore affirm its order.[6]

Dietze asserts as an additional ground for affirmance of the trial court's holding that the New York statute of frauds bars enforcement of the oral agreement alleged by Patterson. Patterson did not address

---

5. In view of this conclusion, it is unnecessary to consider the second part of this Circuit's "due process" test because "the fairness prong cannot compensate for or overcome the requirement of some minimum contacts with the forum state." *Growden v. Ed Bowlin and Associates, Inc.,* 733 F.2d 1149, 1150–51 (5th Cir.1984) (footnote omitted).

6. Our conclusion accords with the Supreme Court's most recent exposition of principles governing personal jurisdiction of nonresident defendants, *Burger King Corp. v. Rudzewicz,* — U.S. —, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In that case, the Court stated,

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.
>
> \*   \*   \*   \*   \*   \*
>
> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.

— U.S. at — – —, 105 S.Ct. at 2183–2185, (citations omitted) (emphasis in original). *Burger*

this contention in her response to Dietze's motion to dismiss; the trial court did not reach it. Nor need we, having affirmed the trial court's holding on the jurisdictional ground.

AFFIRMED.

---

*King* thus works no change in the law applicable to Patterson's action.

We note, however, the Court's clarification of its jurisdiction by appeal, pursuant to 28 U.S.C. § 1254(2), of questions of personal jurisdiction. In such cases, the Court stated,

> [j]urisdiction under 28 U.S.C. § 1254(2) is properly invoked only where a court of appeals *squarely* has 'held' that a state statute is unconstitutional on its face or as applied; jurisdiction does not lie if the decision must rest on other grounds.... [W]e believe that an appeal cannot lie where a Court of Appeals' judgment rests solely on the stipulated applicability of state law. Rather, it must be reasonably clear that the court independently concluded that the challenged statute governs the case and held the statute itself unconstitutional as so applied.

— U.S. at — n. 12, 105 S.Ct. at 2181 n. 12, (citations omitted) (emphasis in original). Thus, if a court of appeals holds, as did the Eleventh Circuit in *Burger King* and as we do here, that "jurisdiction under these circumstances would offend the fundamental fairness which is the touchstone of due process," *id.,* without reference to the relevant state statute, Supreme Court review of the holding may be had only by grant of a petition for certiorari.