**COLWELL REALTY INVESTMENTS, INC., Plaintiff-Appellant,**

v.

**TRIPLE T INNS OF ARIZONA, INC., Defendant-Appellee.**

No. 85–2368.

United States Court of Appeals, Fifth Circuit.

April 4, 1986.

Terry Oxford, Parker C. Folse, III, Houston, Tex., for plaintiff-appellant.

Collyn A. Peddie, Scott J. Atlas, Houston, Tex., for defendant-appellee.

Before BROWN, JOHNSON, and JOLLY, Circuit Judges.

PER CURIAM:

Plaintiff Colwell Realty Investments, Inc. ("Colwell Realty") appeals from the district court's dismissal of its suit against defendant Triple T Inns of Arizona ("Triple T") for lack of personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2). After a thorough examination of the record, this Court affirms the district court's order of dismissal.

## I. BACKGROUND

TC Properties is an Arizona limited partnership with its principal place of business in Mesa, Arizona. The main purpose of TC Properties is to develop and operate a Holiday Inn hotel in Mesa, Arizona. As a limited partnership, TC Properties had a limited partner and a general partner. The general partner was defendant Triple T. The original limited partner was Colwell Properties, Inc. ("Colwell Properties"), a California corporation with its principal place of business in California. Colwell Properties was a subsidiary of The Colwell Company, also a California corporation. The Colwell Company, in turn, was a subsidiary of Baldwin United. The limited partnership agreement was negotiated and executed in Arizona, California, and Florida. Plaintiff Colwell Realty does not argue, and the record does not reflect, any connection with the State of Texas during the negotiation and execution of the limited partnership agreement creating TC Properties.

Upon entering the limited partnership, Colwell Properties made an initial capital contribution of $1.9 million. The limited partnership agreement vested Triple T as the general partner with authority to manage and conduct the affairs of TC Properties. The limited partnership agreement provided that Triple T could not further develop or encumber the limited partnership's property without obtaining the consent of the limited partner.

In the summer of 1983, Colwell Properties and its parent, The Colwell Company, were sold to Mercury Savings Association of Texas ("Mercury Savings"), a Texas Savings and Loan. Defendant Triple T was not involved in this transaction. In connection with this purchase, Mercury Savings created a new corporation, Colwell Realty. Colwell Realty was incorporated under the law of the State of Texas. Triple T was then requested to consent to Colwell Realty's substitution as the new limited partner in place of Colwell Properties. The cover letter, which was written on stationery headed "Colwell Financial Services"

and signed by Daniel R. Gerboth, expressly stated:

The transfer of ownership will not involve a change of operations of The Colwell Company, only a change of name. Current management will remain intact under the new ownership.

Record Vol. II at 193. This letter and the attached forms requesting Triple T's consent originated from the offices of The Colwell Company and Colwell Properties in Los Angeles, California. Triple T, based on the letter, consented to the substitution by returning an executed consent to Los Angeles in accordance with the request of the California corporations. Neither the letter nor the executed form of consent states anything about management, officers, or any ongoing business by Colwell Realty in Texas. All correspondence concerning the substitution of Colwell Realty as limited partner took place between California and the offices of Triple T's president in Indialantic, Florida.

In 1982 or early 1983, defendant Triple T initiated plans to add eighty-four rooms to the existing 165 rooms of the Holiday Inn. Following the substitution of plaintiff Colwell Realty for the original limited partner, Colwell Properties, defendant Triple T continued with its plans for expansion. As might be expected from the earlier representation that the management would not change, Triple T continued to deal with the officers of Colwell Properties to obtain consent for this expansion. On September 16, 1983, just over a month after he had requested the substitution of Colwell Realty, Daniel R. Gerboth consented to the expansion, stating, "The limited partner has approvaed [sic] your request for an 84 room addition...." Record Vol. II at 261. In fact, Gerboth began working with Triple T to arrange financing for the hotel expansion. Shortly thereafter, construction of the hotel expansion began. On February 6, 1984, an attorney from Texas who claimed to represent Colwell Realty informed Triple T that no valid consent had been given for the construction. In response to this conversation, Triple T temporarily halted construction on the Holiday Inn facility.

On March 12, 1984, Colwell Realty brought suit in the Southern District of Texas, alleging breach of contract and breach of Triple T's fiduciary duty as general partner. The crux of Colwell Realty's complaint in the Texas district court was that the former officers of Colwell Properties had no actual or apparent authority to act on behalf of Colwell Realty.[1] A parallel suit was brought by Triple T against Colwell Realty in Arizona state court and was removed to an Arizona federal district court by Colwell Realty. On April 9, 1984, the Arizona federal district court dismissed Triple T's Arizona action against Colwell Realty. Triple T, in turn, sought to dismiss Colwell Realty's Texas action on the basis of lack of personal jurisdiction. On January 29, 1985, the Texas federal district court granted Triple T's motion to dismiss for lack of personal jurisdiction. Colwell Realty sought reconsideration of the district court's order on the ground that it had not completed discovery on the jurisdictional issues and requested that the district court postpone reconsideration until April 1, allowing plaintiff to complete discovery. Colwell Realty did not complete such discovery by April 1 and presented no additional material to the district court. On April 16, 1985, the federal district court in Texas denied reconsideration of its order dismissing the suit. Colwell Realty filed a timely notice of appeal to this Court.

## II. PERSONAL JURISDICTION

■ In analyzing whether the district court correctly dismissed Colwell Realty's suit for lack of personal jurisdiction over defendant Triple T, the Court benefits from a well established framework of judicial authority. Within this framework, the plaintiff Colwell Realty bears the burden of establishing the district court's jurisdiction over defendant Triple T. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162,

---

1. According to Colwell Realty's brief, the former officers of Colwell Properties became officers of yet another subsidiary, the Colwell Financial Corporation.

1165 (5th Cir.1985). When the district court decides the defendant's motion to dismiss without an evidentiary hearing, as did the district court here, a plaintiff's burden is met by presenting a prima facie case for personal jurisdiction. *Id.* Thus, allegations contained in the complaint, except insofar as controverted by opposing affidavits, must be taken as true. However, the trial court is not restricted to plaintiff's pleadings and may determine the jurisdictional issue by receiving affidavits, nterrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Id. See also D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545–46 (5th Cir. 1985). In the instant case, the district court correctly relied upon affidavits and other material in determining the jurisdictional issue.[2]

In a diversity action such as the instant case, personal jurisdiction may be extended over a nonresident defendant if: (1) the nonresident defendant is subject to service of process under the state long arm statute; and (2) the exercise of jurisdiction under state law comports with due process. *See Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985). The parties do not here dispute that the Texas long arm statute has been interpreted to extend to the limits of the due process clause. *See id.* at 1189. *See also Hall v. Helicopteros Nacionales de Colombia,* 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Consequently, this Court's analysis focuses on whether the extension of personal jurisdiction over defendant Triple T in a Texas court comports with the constitutional requirement of due process. *See Stuart,* 772 F.2d at 1189.

The Court's due process inquiry, in turn, focuses on two elements: (a) the non-resident must have some minimum contact with the forum which results from an affirmative act on the part of the nonresident; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Stuart,* 772 F.2d at 1189. Thus, the due process clause ensures that individuals have " 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' " *Burger King Co. v. Rudzewicz,* — U.S. —, —, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment)). "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum," *see id.,* — U.S. at —, 105 S.Ct. at 2182 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)), and the litigation results from alleged injuries arising out of or relating to those activities. *Burger King,* — U.S. at —, 105 S.Ct. at 2182. " 'The [nonresident] defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court in the forum state.' " *Stuart,* 772 F.2d at 1190 (quoting *Growden v. Ed Bowlin & Associates, Inc.,* 733 F.2d 1149, 1151 (5th Cir.1984)). "When a controversy is related to or arises out of a nonresident's contacts with the forum, the minimum-contacts inquiry focuses on the relationship among the defendant, the forum, and the litigation." *Stuart,* 772 F.2d at 1190. The Supreme Court has emphasized that "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King,* — U.S. at —, 105 S.Ct. at 2183 (citation omitted).

---

**2.** Although Colwell Realty does not specifically allege error in this regard, the district court did state that Colwell Realty was required to go beyond its pleadings and offer affirmative proof. While the district court's statement nevertheless remains sound advice to counsel confronting a motion to dismiss, the district court's statement arguably could be construed as error. *See Thompson,* 755 F.2d at 1165. However, no reversible error occurred here. The historical facts are essentially undisputed, and the contacts upon which plaintiff seeks to establish jurisdiction were correctly stated by the trial court.

With this constitutional framework in place, *see also Stuart,* 772 F.2d at 1189–92 (offering thorough discussion of constitutional principles), the Court turns to whether plaintiff Colwell Realty has carried its burden of showing personal jurisdiction over defendant Triple T. In doing so, the Court is mindful that this inquiry is a fact-specific one in which the Supreme Court has accepted a "highly realistic" approach over mechanical or talismanic analyses. *See Burger King,* — U.S. at —, 105 S.Ct. at 2185.

Plaintiff Colwell Realty relies on three arguments to support its contention that the district court erred in rejecting its attempted assertion of jurisdiction. First, Colwell Realty argues that, by consenting to the substitution of a corporation created under the law of Texas, Triple T brought itself within the scope of personal jurisdiction in Texas. Colwell Realty points to provisions in the limited partnership agreement which called for close contact and cooperation of both the limited and general partner. Second, Colwell Realty contends that Triple T's expansion of the hotel in Arizona was a minimum contact since Triple T knew it would require the consent of a corporation created under the law of Texas. Third, by allegedly proceeding with the hotel expansion without obtaining the proper consent, Triple T caused foreseeable injuries on Texas business entities, including Colwell Realty's new owner, Mercury Savings, and Colwell Realty itself. Colwell Realty emphasizes that the injury was particularly foreseeable after its attorney called Triple T by telephone in February 1984 to object to the hotel's expansion.

■ With regard to Colwell Realty's first two arguments, which both hinge on Triple T's consent to do business with a "Texas corporation," the Court notes that merely contracting with a resident of the forum state is insufficient here to subject the nonresident to the forum's jurisdiction. *See Burger King,* — U.S. at —, 105 S.Ct. at 2185; *Stuart,* 772 F.2d at 1192–93. Thus, Colwell Realty's state of incorporation, by itself, is insufficient to confer jurisdiction over the nonresident Triple T. Rather, in deciding whether Triple T's consent to Colwell Realty's substitution subjected Triple T to jurisdiction in Texas, the Court must "look to the factors of prior negotiations, *contemplated* future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the nonresident defendant] *purposefully* established minimum contacts with the forum." *Stuart,* 772 F.2d at 1193 (emphasis added). *See Burger King,* — U.S. at —, 105 S.Ct. at 2185–86. While Colwell Realty attempts to rely on this language from the Supreme Court's decision in *Burger King,* its argument ignores the fact that officials seeking Colwell Realty's substitution as the limited partner represented that its management would remain the same as Colwell Properties in California. This representation was made just one month before Triple T sought consent to expand the Arizona facility. The consent to substitute the new limited partner stated no ongoing business relationship with Texas; it was mailed from California by Colwell officials and sent to Florida. It noted that there was no change in management and requested no alteration in Triple T's conduct of the limited partnership. As the district court noted, by consenting to the substitution, Triple T did not agree to perform or to receive performance of any part of the obligations of the partnership agreement in Texas. The Court therefore determines that Triple T's consent to Colwell Realty's substitution was an insufficient contact to show that Triple T "purposefully availed" itself of a Texas forum.

■ Further, the Court must also reject Colwell Realty's argument that Triple T subjected itself to jurisdiction in Texas by creating foreseeable injuries there after the Texas attorney's telephone call in February 1984. As the district court noted, "The telephonic contacts ... are insufficient to establish jurisdiction. According to *Hall,* 'the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.' "

Memorandum and Order at 9 (quoting *Hall*, 466 U.S. at 416, 104 S.Ct. at 1873). While Colwell Realty correctly points out that this Court has examined foreseeable effects in its due process analysis, the focus of the Court's analysis must be on whether the defendant purposefully availed itself of the benefits and protections of the forum's laws. *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981). The Court has not been apprised how Colwell Realty's unilateral action can · be shown to demonstrate Triple T's "purposeful availment" of a Texas forum. Thus, in the instant case, Colwell Realty's unilateral action of changing its place of management and belatedly notifying Triple T of its objection to the expansion through a telephone caller who claimed to be from Texas is insufficient to create jurisdiction in a Texas forum. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1169; *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1031 (5th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).

■ Given the weakness of Colwell Realty's arguments concerning Triple T's contacts with a Texas forum, Colwell Realty has failed to sustain its burden of establishing personal jurisdiction over Triple T. The Court's conclusion is buttressed by other points from Triple T's uncontroverted affidavits. The limited partnership agreement at issue here was neither solicited, negotiated, or executed in the State of Texas. No officer, employee, or agent of Triple T travelled to Texas in connection with any aspect of the limited partnership agreement. Triple T has no agents or employees in Texas. Triple T's business consists solely of owning and operating the Holiday Inn hotel in Mesa, Arizona, and an interest in another hotel in that state. Further, as noted, the consent to substitute plaintiff Colwell Realty as the limited partner was sought by officials in California, was executed in Florida, and concerned a limited partnership in Arizona. The cover letter requesting that consent expressly stated that the management of the limited partner

would not change and that there would be no change in operations.

In conclusion, we hold that there are insufficient contacts between the nonresident defendant, Triple T, and the State of Texas to render constitutionally permissible the exercise of personal jurisdiction over Triple T by the district court sitting in Texas. It cannot be said, on the basis of the arguments presented here by Colwell Realty, that defendant Triple T purposefully established minimum contacts with that forum. *See Stuart*, 772 F.2d at 1193.

Accordingly, the district court did not err in granting defendant Triple T's motion to dismiss for lack of personal jurisdiction.

AFFIRMED.