896 F.Supp. 660 (1995)
G & H PARTNERS, LTD., Buster Kennedy, Jim Ruhmann, Allen Lynch, Mike Beck, and Sam Talkington, Plaintiffs,
v.
BOER GOATS INTERNATIONAL LIMITED, and Daniel Berry, Individually, Defendants.
Civ. A. No. SA-95-CA-444.
United States District Court, W.D. Texas, San Antonio Division.
August 7, 1995.
*661 *662 James Samuel Wilkins, Jacobs, Willis, et al, San Antonio, TX, for plaintiffs.
Roger L. Merrill, Houston, TX, for defendants.

ORDER
BIERY, District Judge.
This in personam jurisdiction controversy involves the impregnation of Texas female goats with South African frozen goat embryos, the intimate rendezvous occurring in Canada and the funds for the romantic interlude being placed in a bank in Louisiana. Some of the seminal cases to be considered are: McDonald v. Mabee, 243 U.S. 90, 91-93, 37 S.Ct. 343, 343-44, 61 L.Ed. 608 (1917); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); see also Beckett v. State ex rel. Rothert, 10 Ind.App. 408, 37 N.E. 30, 30-31 (Ind.App. 1894); Sherburne County Social Servs. v. Kennedy, 426 N.W.2d 866, 870 (Minn.1988); State v. Cummings, 2 Neb.App. 820, 515 N.W.2d 680, 683-84 (1994).
Presently before the Court is the defendants' Motion to Set Aside Default Judgment and Rule 12(B) Motion for Insufficiency of Service of Process and Lack of Jurisdiction Over the Person, defendants' memorandum of law in support of their motion, and plaintiffs' response. For the reasons stated below, the entry of default and the default judgment are set aside, and this case is dismissed for lack of personal jurisdiction.
Plaintiffs are individuals residing in Texas and a partnership, having its principal place of business involving the raising of goats, in Texas. Defendant Boer Goats International Limited is a Canadian corporation not registered to do business in Texas. Defendant Daniel Berry is a resident of South Africa. The funds sought to be recovered by plaintiffs are in a bank in Louisiana. Plaintiffs allege defendant Berry, in late spring or early summer of 1994, came to San Antonio, Texas, for the purpose of attending a Boer Goat trade show. Plaintiffs further allege defendant Berry met with plaintiff Ruhmann at the trade show and gave him a brochure advertising the defendants' frozen goat embryos. The defendants, however, deny traveling to San Antonio and further contend the plaintiffs, through Ruhmann, contacted them for the brochure.
In any event, the parties agree the defendants sent a brochure advertising the embryos to Dr. Ruhmann at some point before April 19, 1994. On April 19, 1994, plaintiffs entered into a contract with defendants. Under the terms of the contract, defendants were to ship frozen goat embryos from South Africa to Canada to be implanted into the plaintiffs' female goats. The contract also contained a "choice of law" clause which provided:
The parties agree that the Laws of Ontario, Canada in effect on the date on signature hereof will govern any legal proceedings or arbitration arising out of this agreement.
Notwithstanding the dates and places of the respective parties signing and performing this agreement, the contract shall be deemed to be entered into and performed at the Seller's address [in Canada].
*663 Plaintiffs filed their original complaint alleging defendants breached Texas state contract law by providing frozen embryos of a much lesser quality and grade than the "grade one blastocyst" classification provided for in the agreement and that defendants were liable for fraud damages because they knowingly made false representations regarding the quality of the embryos. Plaintiffs moved for, and were granted, a temporary restraining order ("TRO") prohibiting the defendants from removing funds located in defendants' account in the Sunburst Bank in Louisiana. The plaintiffs sought to freeze this account because it contained a $120,000 payment made to defendants for the embryos.
Plaintiffs sent the summons and complaint via facsimile transmittal on May 17, 1995, to Daniel Berry in South Africa and to Boer Goats International Limited in Canada. Plaintiffs also forwarded the summons, along with a copy of the complaint and the TRO, to Canada and South Africa by registered mail on May 18, 1995.
Subsequently, the Court extended the TRO and, following a hearing on May 26, 1995, a preliminary injunction was entered. On June 14, 1995, no answer having been filed, the plaintiffs requested the Clerk of the Court to make an entry of default. The Court was also requested to enter a judgment of default. The clerk filed a Certificate of Entry of Default on June 16, 1995. Thereafter, plaintiffs submitted, by affidavit, evidence of $120,000 in contract damages and proof of their attorney's fees. On June 27, 1995, the Court entered a judgment of default.
Defendants were not present at the hearing on the preliminary injunction, nor did they make an appearance in this matter until their Motion to Set Aside Default Judgment and Rule 12(b) Motion for Insufficiency of Service of Process and Lack of Jurisdiction Over the Person, filed on July 3, 1995. In their motion, defendants contend the entry of default and default judgment should be set aside because plaintiffs failed to serve properly the summons and complaint. Defendants also contend the Court lacks personal jurisdiction over the defendants.
Rule 4(f) provides that service of process upon individuals and corporations in a foreign country may be obtained by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served" or "by other means ... as may be directed by the court." FED.R.CIV.P. 4(f)(2)(C)(ii), 4(f)(3). Plaintiffs failed to meet the requirements of Rule 4(f). Although the summons and complaint were sent return receipt requested via mail, the documents were addressed and dispatched by the plaintiffs, not the clerk as required by Rule 4(f). Moreover, the facsimile transmittals fail to comport with Rule 4(f) because this method of service was not directed by the Court. Accordingly, the entry of default and default judgment are set aside for noncompliance with process provisions regarding service upon individuals and corporations in foreign countries.
Having set aside the clerk's entry of default and the default judgment, the Court next considers defendants' challenge to the Court's in personam jurisdiction. If a "nonresident defendant protests the exercise of personal jurisdiction, the burden falls on the plaintiff to make a prima facie showing that personal jurisdiction exists." Rittenhouse v. Mabry, 832 F.2d 1380, 1382 (5th Cir.1987). When the district court decides defendants' motion to dismiss without an evidentiary hearing, as does the Court here, the allegations contained in the complaint, except insofar as controverted by opposing affidavits, must be taken as true. Colwell Realty Invs. v. Triple T Inns, Inc., 785 F.2d 1330, 1333 (5th Cir.1986); Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir.1985).
In a diversity action, personal jurisdiction may be exercised over non-resident defendants if: (1) the nonresident defendants are amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the due process clause of the fourteenth amendment. Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1166 (5th Cir.1985); D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg Inc., 754 F.2d 542, 545 (5th Cir.1985); Smith v. DeWalt Prods. Corp., 743 *664 F.2d 277, 278 (5th Cir.1984). The first step of this dual inquiry is a matter of determining the reach of the forum state's long-arm statute. The second step  the due process inquiry  is governed by federal law and requires the satisfaction of two elements: (1) the nonresidents must have some minimum contact with the forum which results in an affirmative act on their part; and (2) it must be fair and reasonable to require the nonresident to defend the lawsuit in the forum state. D.J. Invs., Inc., 754 F.2d at 545; Pedelahore v. Astropark, Inc., 745 F.2d 346, 347 (5th Cir.), reh'g denied, 751 F.2d 1258 (1984). Because the Texas long arm statute has been interpreted to extend to the limits of due process, the Court's inquiry in this case focuses solely on whether the assertion of jurisdiction over the defendants by a district court sitting in Texas would be constitutionally permissible under the due process clause. Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 777 (5th Cir.1986), cert. denied, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).
For the exercise of jurisdiction to be consistent with due process, nonresident defendants must have some "minimum contact" with the forum state which results from an affirmative act on the part of the nonresidents. International Shoe Co., 326 U.S. at 316, 66 S.Ct. at 158.
In evaluating a nonresident's contacts with the forum, we must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state.
Holt Oil & Gas Corp., 801 F.2d at 777 (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)). In making this determination, the trial court is obligated to disregard plaintiffs' actions, for "the unilateral activities of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Patterson v. Dietze, Inc., 764 F.2d 1145, 1146 (5th Cir. 1985) (citing Hanson, 357 U.S. at 253, 78 S.Ct. at 1239-40). Moreover, it is well established a nonresident may permissibly structure his primary conduct so as to avoid being haled into court in a particular state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
When a court exercises personal jurisdiction over a nonresident defendant based on minimum contacts with the forum as related to a particular controversy, the court is exercising "specific jurisdiction." Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). To exercise specific jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining suit offends traditional notions of fair play and substantial justice. Shaffer, 433 U.S. at 204, 97 S.Ct. at 2579. Even where specific jurisdiction is lacking, however, the court may nevertheless exercise "general jurisdiction" based upon the defendants' contacts with the forum unrelated to the controversy. Helicopteros Nacionales de Colombia S.A., 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. To exercise general jurisdiction, the court must determine whether "the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." Stuart, 772 F.2d at 1190-91 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779, 104 S.Ct. 1473, 1480-81, 79 L.Ed.2d 790 (1984)).
The Court first examines whether an exercise of specific jurisdiction is permissible. As stated above, the plaintiffs' complaint alleges: "[i]n the late spring or early summer of 1994, defendants appeared in San Antonio, Texas, for the purpose of attending a Boer Goat trade show. At that time, defendants passed out a brochure advertising PURE-BRED SOUTH AFRICAN BOER GOAT FROZEN EMBRYOS." To controvert this allegation, defendants filed the affidavit of Daniel Berry. In his affidavit, defendant Berry states:
In or about January 1994, I met Jim Ruhmann at a convention in Australia. Later, before April 19, 1994, Jim Ruhmann contacted *665 me and asked me to send him a brochure. I sent him the brochure. I neither traveled to nor [met] with the captioned plaintiffs in Texas at the Boer Goat trade show in San Antonio.[1]
Because the allegations in plaintiffs' complaint regarding defendant Berry's presence at the Boer Goat trade show have been controverted by opposing affidavit, they cannot be taken as true. Colwell Realty Invs., 785 F.2d at 1333; Stuart, 772 F.2d at 1192. Therefore, defendants' only uncontroverted contacts with Texas relating to the instant controversy are: (1) defendants mailed a brochure to plaintiff Ruhmann; (2) defendants entered into a contract with plaintiffs, Texas residents with a principal place of business in Texas; and (3) defendants communicated with plaintiffs in writing subsequent to the execution of the contract. The Court concludes these limited contacts are insufficient to support an exercise of specific jurisdiction.
On several occasions, the Fifth Circuit has observed that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. Holt Oil & Gas Corp., 801 F.2d at 778; Colwell Realty Invs., 785 F.2d at 1334; Stuart, 772 F.2d at 1192-93. Moreover, according to the terms of the contract, the relationship between the parties was consummated in Canada, and Canadian law governs the agreement. This does not indicate a purposeful availment of the forum state's laws. Holt Oil & Gas Corp., 801 F.2d at 778; Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir. 1983), cert. denied, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). This conclusion is further bolstered by the fact that performance of the contract  implanting the frozen goat embryos into plaintiffs' does  was centered in Canada, not Texas. Holt Oil & Gas Corp., 801 F.2d at 778; Patterson, 764 F.2d at 1147; Hydrokinetics, Inc., 700 F.2d at 1029. Moreover, the fact that payments were not made in Texas, but mailed to Louisiana, weighs in favor of determining that insufficient contacts existed to support an exercise of specific jurisdiction.[2] Additionally, the exchange of communications between Canada and Texas "in the course of developing the contract and carrying out the contract was in and of itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law." Holt Oil & Gas Corp., 801 F.2d at 773. These communications to Texas rested on nothing but "the mere fortuity" that plaintiffs happen to be residents of the forum. Id; see also Patterson, 764 F.2d at 1147. In sum, the Court concludes the totality of the defendants' contacts with Texas do not support an inference of purposeful availment and, therefore, the minimum contacts necessary constitutionally to exercise specific jurisdiction over defendants is not present.
Having concluded insufficient contacts exist among Texas, the defendants, and the instant controversy to support an exercise of specific jurisdiction, the Court next considers whether an exercise of general jurisdiction is proper. "To do so requires us to explore the nature of [defendants'] contacts with Texas to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." Holt Oil & Gas Corp., 801 F.2d at 778. The Court concludes they do not. Defendants' have controverted plaintiffs' allegation that defendant Berry traveled to Texas on one *666 occasion to attend a Boer Goat trade show.[3] Even if true, however, an isolated journey into Texas for business purposes does not constitute the level of contact which must exist for general jurisdiction to lie. Helicopteros Nacionales de Colombia S.A., 466 U.S. at 418-19, 104 S.Ct. at 1874-75 (purchasing trips into the forum insufficient to support assertion of general jurisdiction); see also Holt Oil & Gas Corp., 801 F.2d at 779 (frequent journeys into Texas for personal and recreational purposes, in addition to ownership of realty in forum, status as investor and director of Texas corporation, and constant and extensive business connection with Texas constitute continuous and systematic contacts required to satisfy due process). In conclusion, defendants do not have sufficient minimum contacts with Texas to support an exercise of either specific or general in personam jurisdiction. The assertion of jurisdiction over defendants by a district court sitting in Texas, therefore, would not be constitutionally permissible under the due process clause. Accordingly,
IT IS ORDERED that the entry of default and default judgment are set aside.
IT IS FURTHER ORDERED that this case is dismissed for lack of personal jurisdiction.
ORDERED.

JUDGMENT
The Court considered the Judgment to be entered in the above-styled and numbered cause. Pursuant to the Order of this date,
IT IS ORDERED that the entry of default and default judgment are set aside.
IT IS FURTHER ORDERED that this case is dismissed for lack of personal jurisdiction.
ORDERED.
NOTES
[1] The statement attached to the motion to dismiss was not signed or sworn to under oath. Subsequently, defendant Berry executed the document under oath, and the affidavit was filed with the Court.
[2] The mailing of payments into the forum state constitutes a "purposeful availment" of the forum state's laws only if the contract is performed in the forum state. Even if plaintiffs had made payments in Texas, this would not constitute a purposeful availment because the contract was not performed in Texas, but in Canada. See e.g., Holt Oil & Gas Corp., 801 F.2d at 778 (given that material performance occurred in Mexico, wiring of payments to Texas does not show purposeful communication with forum); Patterson, 764 F.2d at 1147 (mailing of payments into forum does not constitute contact); C & H Transp. Co. v. Jensen & Reynolds Constr. Co., 719 F.2d 1267, 1270 (5th Cir.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1930, 80 L.Ed.2d 475 (1984) (fact that payment mailed to Texas is hardly significant in terms of purposeful availment); Hydrokinetics, Inc., 700 F.2d at 1029 ("nor do we weigh heavily the mailing of payment checks into the forum").
[3] The record does not reveal that defendants had other contacts with Texas, nor do plaintiffs contend Boar Goats International Limited and Berry regularly sought the services of Texas residents.