United States Court of Appeals,

Fifth Circuit.

No. 93-2035.

RUSTON GAS TURBINES, INC., Plaintiff,

v.

DONALDSON COMPANY, INC., Defendant-Third Party, Plaintiff-Appellant,

v.

CORCHRAN, INC., Third-Party Defendant-Appellee.

Dec. 22, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, KING and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Donaldson Company, Inc. ("Donaldson") is appealing the decision of the court below to dismiss its third-party claim against appellee Corchran, Inc. ("Corchran"), for lack of personal jurisdiction. Because we find that the federal district court in Texas did have personal jurisdiction over Corchran, we REVERSE and REMAND.

## I. BACKGROUND

Ruston Gas Turbines, Inc. ("Ruston") originally filed this action against Donaldson in Texas state court for breach of contract, breach of warranty and strict products liability in connection with a contract between the two companies for the manufacture and sale of two gas-turbine engine systems. Donaldson removed to federal court on the basis of diversity; Ruston is a Texas corporation and Donaldson is a Delaware corporation with its principal place of business in Minnesota. Donaldson then filed a third-party complaint for contribution or indemnity against appellee Corchran, a Minnesota corporation that had subcontracted with Donaldson to manufacture certain component parts of the systems sold by Donaldson to Ruston.

Corchran filed a motion to dismiss the third-party claim for lack of personal jurisdiction. In the motion to dismiss, supported by the affidavit of its president, Corchran stated the following:

Corchran is a Minnesota corporation with its principal place of business in Waseca, Minnesota. Corchran does not conduct business or maintain a place of business in Texas. It does not employ or maintain a sales representative or manufacturer representative in Texas. It has not recruited any employees in Texas. Corchran has not designated a registered agent for service of process in Texas, and is not required by Texas law to do so. Corchran has not contracted by mail with any Texas resident whereby the contract was to be performed in whole or part in Texas. Corchran has not committed a tort in Texas.

Corchran claims that all of its actions related to its contract with Donaldson occurred in Minnesota. The items sold by Corchran under that contract were shipped FOB Waseca, Minnesota. Corchran claims it had no direct contract with Ruston and no verbal, written, or any other communication with Ruston regarding the sale of the equipment at issue. Corchran says its only communications were with Donaldson. Corchran says none of its employees communicated with or performed any work with persons in Texas in fabricating, manufacturing or delivering the equipment.

In its responses to Corchran's motion to dismiss, supported by the affidavits of Donaldson and Ruston employees, Donaldson lists the following facts: (1) Corchran agreed in its contract with Donaldson to manufacture two air-infiltration systems that would be purchased by Ruston; (2) Corchran was aware that the parts it was manufacturing would be shipped to Texas; (3) The purchase order issued by Donaldson to Corchran specifically indicated that the air infiltration systems were to be sold to Ruston in Houston; (4) Corchran delivered the equipment it manufactured into the hands of a common carrier for direct shipment to Ruston in Houston; (5) The bills of lading covering the goods Corchran shipped identified the consignee and destination as "Ruston Gas Turbines, Inc." with Ruston's Houston address; (6) On 211 different occasions between December 1, 1977 and June 17, 1992, Corchran shipped equipment directly from its plant in Minnesota to locations in Texas; (7) These 211 shipments were to 44 different entities and locations in Texas; (8) On several occasions during this 15-year period, Corchran employees accompanied Donaldson employees to Texas to assist and meet with Donaldson's customers in Texas who were purchasing products containing Corchran components; and (9) Corchran's practice of shipping items directly to

Ruston continued even after the transaction that was made the subject of this lawsuit.

The district court found that it did not have personal jurisdiction over Corchran. It granted Corchran's motion and dismissed Donaldson's claim against Corchran.

Upon motion by Donaldson, the trial court determined under Federal Rule of Civil Procedure 54(b) that its dismissal of the third-party claim against Corchran was a final, appealable order.[1] Donaldson appealed to this Court, arguing that the trial court erred in dismissing its claim against Corchran for lack of personal jurisdiction.

## II. ANALYSIS

### A. Applicable Law on Personal Jurisdiction

Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined *de novo* by this Court.[2] When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction.[3] A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.[4] These two steps collapse into one for our purposes because the Texas Supreme Court has established that the Texas long-arm

---

[1]On or about October 15, 1993, the district court in this action granted summary judgment in favor of defendant Donaldson on all claims brought by plaintiff Ruston. Ruston has appealed the summary judgment to this Court, therefore the issue of personal jurisdiction over Corchran is not moot.

[2]*E.g., Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993); *Command-Aire v. Ontario Mechanical Sales & Service,* 963 F.2d 90, 93 (5th Cir.1992).

[3]*Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990) ("[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.") (quoting *D.J. Investments, Inc. v. Metzler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546 (5th Cir.1985).).

[4]*E.g., Ham,* 4 F.3d at 415; *Irving v. Owens-Corning Fiberglas Corp.,* 864 F.2d 383, 385 (5th Cir.), *cert. denied sub nom. Jugometal Enterprise for Import and Export of Ores and Metals v. Irving,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989).

statute[5] extends to the limits of federal due process.[6]

The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[7] Both prongs of the due process test must be met in this case if the United States District Court for the Southern District of Texas is to exercise personal jurisdiction over Corchran.

### B. Minimum Contacts

The "minimum contacts" prong of the test is perhaps the most difficult to ascertain and has been refined to determine two types of personal jurisdiction—specific or general. A state exercises "specific jurisdiction" over a non-resident defendant when the lawsuit arises from or relates to the defendant's contact with the forum state.[8] A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted.[9] In contrast, when the act or transaction being sued upon is unrelated to the defendant's contacts with the forum state, personal jurisdiction does not exist unless the defendant has sufficient "continuous and systematic contacts" with the forum state to support an exercise of "general jurisdiction."[10]

In this case, appellant Donaldson's claim against appellee Corchran arises out of Corchran's

---

[5]TEX.CIV.PRAC. & REM.CODE §§ 17.041-045 (Vernon 1986).

[6]*E.g., Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *Ham,* 4 F.3d at 415 & n. 7.

[7]*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

[8]*See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987).

[9]*Ham v. La Cienega Music Co.,* 4 F.3d 413, 415-16 (5th Cir.1993); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990).

[10]*Ham,* 4 F.3d at 416 n. 10 (citing *Helicopteros,* 466 U.S. at 414 & n. 9, 104 S.Ct. at 1872 & n. 9).).

contacts with Texas, so we will perform a specific jurisdiction analysis. We do not decide today whether Corchran's contacts with Texas are sufficiently "continuous and systematic" to support an exercise of general jurisdiction.

The "minimum contacts" prong, for specific jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[11] The non-resident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.[12]

The Supreme Court has stated that a defendant's placing of its product into the stream of commerce with the knowledge that the product will be used in the forum state is enough to constitute minimum contacts. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Fifth Circuit is among the circuits that have interpreted *World-Wide Volkswagen* to hold that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 111, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987) (citing *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir.1984).).

In *Asahi,* the Supreme Court's most recent statement on personal jurisdiction, four justices favored a narrower interpretation of the stream of commerce doctrine.[13] The plurality opinion by Justice O'Connor advocated a requirement of "additional conduct" by the defendant to support

---

[11]*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Ham,* 4 F.3d at 415-16; *Irving,* 864 F.2d at 385.

[12]*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Irving,* 864 F.2d at 385.

[13]*Asahi,* 480 U.S. at 110, 107 S.Ct. at 1031; *see also Irving,* 864 F.2d at 385. While four justices in *Asahi* supported the "stream-of-commerce-plus" theory and would decide the case on the "minimum contacts" prong, the remaining four justices focused on an alternate rationale, stating that the exercise of personal jurisdiction over the defendant did not meet the second, "fair play" prong of the due process test. *Asahi,* 480 U.S. at 115-16, 107 S.Ct. at 1033-34.

personal jurisdiction under the stream of commerce theory:[14]

> "The "substantial connection' between the defendant and the forum state necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state.... [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state."

*Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (citations omitted).

The plurality opinion gave examples of "additional conduct" that would satisfy the "stream-of-commerce-plus" test: (1) showing an intent or purpose to serve the market in the forum state; (2) designing the product for that state's market; (3) advertising in the forum state; (4) establishing channels to provide regular advice to customers in the forum state; or (5) marketing the product through a distributor-agent in the forum state. *Id.*

In the years after *Asahi,* the Fifth Circuit has continued to follow the original "stream-of-commerce" theory established in the majority opinion of *World-Wide Volkswagen,* and has rejected the "stream-of-commerce-plus" theory advocated by the *Asahi* plurality. *Irving v. Owens-Corning Fiberglas Corp.,* 864 F.2d 383, 386 (5th Cir.), *cert. denied sub nom. Jugometal Enters. for Import and Export of Ores and Metals v. Irving,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989); *Bearry v. Beech Aircraft Co.,* 818 F.2d 370, 375 (5th Cir.1987) (noting that "[t]he dimension of the "stream of commerce' doctrine now divides the Supreme Court" and referring to the "uncertainty" evident in *Asahi* ). In *Irving,* 864 F.2d at 386, this circuit stated:

> "Because the [Supreme] Court's splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue, we continue to gauge [the nonresident defendant]'s contacts with Texas by the stream of commerce standard as described in *World-Wide Volkswagen* and embraced in this circuit."

Our most recent post-*Irving* personal jurisdiction case reaffirms the *Irving* rationale. *Ham v. La Cienega Music Co.,* 4 F.3d 413 (5th Cir.1993). In *Ham,* we noted the disagreement of the Supreme Court justices in *Asahi* regarding the stream of commerce theory and concluded: "Absent rejection by a majority on the Supreme Court, we have continued to apply the stream of commerce analysis

---

[14]*Asahi,* 480 U.S. at 110, 107 S.Ct. at 1031; *see also Irving,* 864 F.2d at 385.

found in our pre-*Asahi* cases."[15]

In its order finding a lack of personal jurisdiction over Corchran in this case, the district court relied explicitly on the "stream-of-commerce-plus" theory advocated in the *Asahi* plurality opinion. Citing *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032, the court concluded that because Donaldson did not show that Corchran engaged in acts "purposefully directed toward the forum state," a federal district court in Texas could not exercise personal jurisdiction over Corchran. This reasoning fails to recognize the Fifth Circuit's interpretation of the stream of commerce test and is therefore erroneous. In *Irving,* 864 F.2d at 386, and again in *Ham,* 4 F.3d at 416 n. 11, this circuit expressed its position that *Asahi* does not provide clear guidance on the "minimum contacts" prong, and therefore we will continue to follow the stream of commerce analysis in *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 559. Under the *World-Wide Volkswagen* test, Corchran's contacts with Texas are more than enough to justify an exercise of personal jurisdiction. *See Irving,* 864 F.2d at 386-87; *Bean Dredging,* 744 F.2d at 1085.[16] Corchran intentionally placed its products into the stream of commerce by delivering them to a shipper destined for delivery in Texas. At the time the goods left Corchran's plant in Minnesota, Corchran not only *could have foreseen* that the products might end up in Texas, it *knew* as a fact that the products were going to be delivered to a specific user in Houston, Texas. Given Corchran's 211 contacts with Texas through its business relationship with Donaldson over the years, as well as the visits of its own employees to Texas to serve Donaldson's customers, Corchran reasonably should have anticipated that it could be haled into court in Texas.

C. Fair Play and Substantial Justice

---

[15]*Ham,* 4 F.3d at 416 & n. 11; *Gulf Consol. Services, Inc. v. Corinth Pipeworks, S.A.,* 898 F.2d 1071, 1073 (5th Cir.) (citing *Bearry,* 818 F.2d at 375) (follows the original *World-Wide Volkswagen* test without comment), *cert. denied,* 498 U.S. 900, 111 S.Ct. 256, 112 L.Ed.2d 214 (1990); *See also Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1548 & n. 17 (11th Cir.) (noting that the Fifth Circuit in *Irving,* as well as federal district courts in Utah, Guam, Indiana, Kansas and Virginia, have declined to follow the *Asahi* plurality), *cert. denied sub nom. Regie Nationale Des Usines Renault S.A. v. Vermeulen,* --- U.S. ----, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993).

[16]All facts alleged by Donaldson regarding jurisdictional issues must be taken as true for purposes of determining whether Donaldson has met its burden of proving a prima facie case for the existence of personal jurisdiction. *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990).

Even if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends "traditional notions of fair play and substantial justice."[17] In determining this fundamental fairness issue we must examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.[18]

In this case, Donaldson has a strong interest in obtaining convenient and effective relief. The claims Donaldson asserts against Corchran are third-party claims arising from Ruston's claims against Donaldson in the same case. The Texas forum will bring all the parties into one courtroom for a single resolution. Texas, as forum state, also has an interest in adjudicating a dispute that involves a sale of goods to a Texas consumer, Ruston. Corchran participated in the transaction by delivering component parts to Texas that were incorporated into a finished good in Texas. The burden on Corchran to defend in Texas is not unreasonable, given that Corchran employees have traveled to Texas in connection with its business relationship with Donaldson. It is not unfair or unjust to require the manufacturer of a good that is knowingly delivered to a specific state to respond to a lawsuit arising out of defects in the good in that state. Therefore, the second prong of the due process test is satisfied; the exercise of personal jurisdiction over Corchran in Texas does not offend fair play and substantial justice.

### III. CONCLUSION

Our decision in this case is governed by our opinions in *Bean Dredging,* 744 F.2d at 1085, and *Irving,* 864 F.2d at 386. Because we hold, under the original "stream-of-commerce" theory established in *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567, that the federal district court in Texas did have personal jurisdiction over Corchran, we REVERSE the trial court's dismissal

---

[17]*International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *See also Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032; *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 559; *Command-Aire v. Ontario Mechanical Sales & Service,* 963 F.2d 90, 95 (5th Cir.1992); *Irving,* 864 F.2d at 387.

[18]*Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032; *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 559; *Irving,* 864 F.2d at 387.

of Donaldson's third-party claims and REMAND the case for further proceedings in accordance with this opinion.