Gary Lynn **WILLIAMS**

v.

Javier **CASTRO.**

No. CIV. A. G–98–302.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 8, 1998.

A. Craig Eiland, Galveston, TX, for Gary Lynn Williams, plaintiff.

Alan B. Folger, John Bradley Mitchell, Roberts, Markel and Folger, Houston, TX, for Javier Castro, defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

KENT, District Judge.

In this action, Plaintiff Gary Lynn Williams brings claims for personal injuries sustained as a result of Defendant's alleged negligence and the unseaworthiness of his fishing boat. Defendant argues that the Court lacks personal jurisdiction over him. Now before the Court is Defendant's Motion to Dismiss, or Alternatively to Transfer Venue filed on August 24, 1998. For the reasons stated below, the Motion to Dismiss is **DENIED,** and the Motion to Transfer Venue to the United States District Court for the Central District of California, Western Division, is **GRANTED.**

In federal court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a non-resident defendant if the defendant "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as Constitutionally permissible, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex.1990).

Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution involves a two-pronged inquiry. First, the Court must conclude that the defendant has "minimum contacts" with Texas.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must also conclude that requiring a defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418.

██ The "minimum contacts" aspect of due process can be satisfied by a finding of either specific jurisdiction or general jurisdiction. *Wilson*, 20 F.3d at 647. For general personal jurisdiction, the defendant's contacts with the foreign state must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51. Specific personal jurisdiction exists over a non-resident defendant if the defendant has " 'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489 (5th Cir.1993). The critical inquiry for specific personal jurisdiction, therefore, is whether the defendant, by directing activities to the forum state, purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). The defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court there. *Id.; see also Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.1993). A single contact with the forum state can be sufficient to support specific jurisdiction. *Ruston Gas Turbines*, 9 F.3d at 419; *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir.1988).

Plaintiff in the instant case is a resident of Galveston County, Texas. On March 24, 1998, and again on a later, unspecified date, Williams was injured while serving as captain of the F/V MAR–Y–SOL. The boat was docked in Ventura Harbor, California. The F/V MAR–Y–SOL is owned by Defendant Javier Castro, a resident of California. Castro has never operated the F/V MAR–Y–SOL in the Gulf of Mexico or Texas' waters. Castro also owns MAR–Y–SOL Seafood, a sole proprietorship with its principal place of business in Oxnard California, through which he sells the seafood caught on the F/V MAR–Y–SOL. MAR–Y–SOL Seafood does not maintain offices in Texas, advertise in Texas, nor sell products in Texas. Castro (to his great detriment) has never visited Texas.

██ Defendant's only contacts with Texas are activities associated with the employment of Plaintiff and his step-son. Williams alleges that he received a total of three phone calls from Castro and his agents regarding employment in California as a shrimp boat captain for the F/V MAR–Y–SOL. During one of those phone conversations Castro also "recruited" Williams's stepson, a Texas resident, to serve as a deckhand. Additionally, Castro sent money to Williams to pay for his and his step-son's transportation to ·California. Immediately after Williams was injured, he was treated by physicians in California. He was subsequently treated and operated on by a number of doctors in Texas. Based upon these contacts, Williams alleges that the Court has specific personal jurisdiction over Castro. However, Defendant's Motion to Dismiss highlights the key fact in this case—Williams initially contacted Castro, and he made that initial contact while he and his step-son were in California. Plaintiff's Response does not dispute that he made the initial contact with Defendant, and he concedes that he and his step-son were recruited while in California. Plaintiff's conspicuous failure to controvert that he, not the Defendant, made the initial contact (while in California) requires that the Court accept Defendant's allegation as true.

Defendant's contacts with the state of Texas do not satisfy the Constitutional test for the existence of personal jurisdiction in this forum. This would be a much closer case if Defendant had specifically chosen to target the Texas market for employment prospects and as a result had hired Plaintiff and his step-son. For example, in *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 882–85 (5th Cir. 1993), *reh'g granted*, 20 F.3d 614 (1994), *relevant part reinstated*, 61 F.3d 1113 (1995), the

United States Court of Appeals for the Fifth Circuit found the requisite minimum contacts for personal jurisdiction in Mississippi over a foreign Defendant who: (1) sent a representative to Mississippi to hold a recruitment meeting; (2) hired the plaintiff at that meeting under terms that contemplated future contacts with Mississippi; (3) agreed to fly the plaintiff to Mississippi every year for a thirty-day vacation; (4) returned him to Mississippi for medical treatment paid for by the defendant; (5) replaced the plaintiff with another employee from Mississippi recruited at the same meeting as the plaintiff; and (6) advertised job openings in newspapers from three neighboring states that were distributed in Mississippi. The Court of Appeals found that based upon these contacts the defendant "could reasonably anticipate being haled into court in Mississippi as a result of its relationship with [the plaintiff]." *See id.* at 884. In the instant case, without similar "purposefully directed" activity at residents of Texas—affirmatively reaching into the state of Texas in order to obtain employees— it is irrelevant how many times Defendant called Plaintiff to negotiate an employment contract; the requisite minimum contacts just do not exist such that Defendant could reasonably anticipate being haled into court in Texas.

■ The great weight of Fifth Circuit authority further supports the Court's conclusion. Here it was "mere fortuity" that Plaintiff happened to be a Texas resident. Mere fortuity does not rise to the level of "purposeful availment" required by the due process clause. *See Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 & n.23 (5th Cir.1974); *see also Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *Holt Oil & Gas Corp.,* 801 F.2d at 778(communications to Texas forum insufficient to confer specific jurisdiction over nonresident defendant where communication to forum rested on mere fortuity that plaintiff was a resident of the forum). The activities of Defendant—three phone calls and the wiring of money to Plaintiff— are more closely analogous to the facts of *Aviles v. Kunkle,* 978 F.2d 201 (5th Cir.1992) than to *Coats,* 5 F.3d at 882–85. In that case personal jurisdiction in Texas did not exist over Ohio farmers who employed migrant

Texas farm workers. *See Aviles,* 978 F.2d at 204. The plaintiffs alleged specific jurisdiction based upon the receipt of a telephone call and a letter from the defendants advising them of the start date of their employment. *See id.* at 205; *see also Colwell Realty Investments v. Triple T Inns,* 785 F.2d 1330, 1334 (5th Cir.1986) (merely contracting with resident of forum state insufficient to subject nonresident to forum's jurisdiction); *Patterson v. Dietze, Inc.,* 764 F.2d 1145, 1147 (5th Cir.1985)(where vast majority of parties' activities are conducted in a foreign state, incidental contacts with forum are insufficient to confer specific jurisdiction over nonresident defendant); *Barnstone v. Congregation Am Echad,* 574 F.2d 286 (5th Cir.1978) (negotiations by telephone and mail with Texas architect regarding construction of a synagogue in Maine did not confer personal jurisdiction over Maine defendant).

Accordingly, Defendant's Motion to Transfer Venue for lack of personal jurisdiction is hereby **GRANTED.** Pursuant to 28 U.S.C. § 1631, this case is transferred to the United States District Court for the Central District of California, Western Division, in order to cure the lack of jurisdiction. In electing to transfer this case, the Court recognizes that Plaintiff has a valid cause of action against Defendant. As a result of the transfer, Plaintiff loses nothing but his choice of forum. Plaintiff can still assert all of his claims in a forum in which it is fair to require both sides to present their case. Plaintiff accepted employment in California and can surely manage to transport himself there for the purpose of litigating his claims. All parties are **ORDERED** to bear their own costs and attorneys' fees incurred herein to date.

**IT IS SO ORDERED.**