Joseph CARSON,

v.

**MAERSK, LTD.**

**Civil Action No. G–98–525.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 19, 1999.

Ronald L White, Brown Sims Wise & White, Houston, TX, for Ron White.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Joseph Carson.

James Richard Watkins, Royston Rayzor et al., Galveston, TX, for Maersk Ltd, Exporter Transport Corporation.

### ORDER DENYING DEFENDANT EXPORTER TRANSPORT CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KENT, District Judge.

This case arises under the Jones Act, 46 U.S.C.App. § 688 *et seq.*, and the general maritime law. Plaintiff Joseph Carson seeks damages for injuries allegedly sustained while he served aboard the M/V P.F.C. JAMES ANDERSON, JR., a vessel owned by Defendant Exporter Transport Corporation ("Exporter"). Now before the Court is Defendant Exporter's Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons set forth below, Defendant Exporter's Motion is **DENIED**.

### I. FACTUAL SUMMARY

Before his injury, Plaintiff Joseph Carson served as a Bosun aboard the M/V P.F.C. JAMES ANDERSON, JR. The vessel was operating near Manama, Bahrain, in the Persian Gulf on June 10, 1998, when Plaintiff allegedly suffered the injuries forming the basis of this lawsuit.

Defendant Exporter, a Delaware corporation with its principal place of business in Virginia, is the owner of the M/V P.F.C. JAMES ANDERSON, JR. Defendant Exporter is or was a subsidiary of Defendant Maersk, Ltd. ("Maersk"), a Danish corporation.[1] The two companies appear to be

---

**1.** After incorporating Exporter, Defendant Maersk sold the subsidiary to a corporation

closely integrated. Exporter, which was originally formed as a subsidiary by Maersk to pursue a contract with the United States government, shares business and service of process addresses with parent Maersk. In addition, Exporter's officers and directors are all employees of Maersk's parent company, Maersk, Inc., and Maersk determines which of Maersk, Inc.'s employees will serve in such capacities. Exporter's officers and directors receive no salaries beyond those they receive from Maersk, Inc. Exporter purportedly employs the crewmembers aboard the P.F.C. ANDERSON, but it has no other employees, and Maersk prepares and administers Exporter's entire payroll. Additionally, Maersk places all insurance on Exporter, handles any claims against Exporter and establishes Exporter's employee operation policies. Exporter has no net worth and has never had any earnings.

## II. ANALYSIS

In Federal Court, personal jurisdiction over a nonresident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex.Civ.Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due-process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993).

Whether the exercise of personal jurisdiction over Defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendants have "minimum contacts" with Texas. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendants to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston,* 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding specific jurisdiction or general jurisdiction. *See Wilson,* 20 F.3d at 647. If the conduct of a defendant that supports personal jurisdiction is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *See Ruston Gas Turbines,* 9 F.3d at 418–19. The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil...."). Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer general jurisdiction. However, these contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v.*

called Aylesbury Trust for the consideration of $1.

*Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar,* 990 F.2d at 1496.

At the outset, the Court notes that although the burden is on Plaintiff, she need only make a prima facie showing of jurisdiction, and her allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in her favor. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir. 1990). The Court will examine Plaintiff's arguments with respect to each of the Defendants.

Defendant Maersk concedes in its Answer to Plaintiff's Complaint that it is subject to the personal jurisdiction of this Court. However, Defendant Exporter, Maersk's subsidiary, argues that it has no contacts with this forum and that as a subsidiary, any contacts of its parent company cannot be imputed to it for purposes of personal jurisdiction.

█ Generally, one corporation's contacts with a forum cannot serve as the basis for holding a parent or subsidiary corporation amenable to personal jurisdiction in that forum. *See Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir. 1983) (citing 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.25[6], at 4–272 (2d ed.1982)). However, under certain circumstances, a sufficiently close relationship between a parent and its subsidiary may subject one corporation to personal jurisdiction based on the contacts of the other. *See id.* (citing *Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974); *Turner v. Jack Tar Grand Bahama, Ltd.,* 353 F.2d 954, 956 (5th Cir.1965)). To impute the contacts of one corporation to another, there must be evidence of one corporation exercising sufficient control over the other to make the other its agent or alter ego. *See id.; see also Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990). The United States Court of Appeals for the Fifth Circuit has articulated a list of factors to determine whether corporate entities are sufficiently related to impose jurisdiction on one based on the forum contacts of the other. Those factors include: the amount of stock owned by the parent of the subsidiary; whether the two corporations have separate headquarters; whether the two corporations share common officers and directors; whether corporate formalities are observed; whether separate accounting systems are maintained; whether one exercises complete authority over the other's general policy; and whether one exercises complete authority over the other's daily operations. *See Hargrave,* 710 F.2d at 1160.

█ In this case, only one of the *Hargrave* factors clearly militates against a finding that Exporter is the alter ego of Maersk. Shortly after it formed Exporter to procure a lucrative contract with the United States government, Defendant Maersk sold the company to Aylesbury Trust for the token consideration of $1. Thus, Maersk no longer owns stock in Exporter. However, that factor by itself does not require the conclusion that Exporter is not the alter ego of Maersk. *See Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 338–39 (5th Cir.1999) (applying the *Hargrave* test despite the fact that the defendant had a sibling rather than parent-subsidiary relationship with the corporation which had contacts with the forum).

The remaining factors favor the conclusion that Exporter is in fact the alter ego of Maersk. First, to the extent that Exporter has a headquarters, it appears to share it with Maersk: each company lists the same business address and each has the same address for service of process. Second, while the two companies apparently do not share the same officers and directors, Exporter's officers and directors are all employees of Defendant Maersk's parent company, Maersk, Inc. Moreover, Exporter's officers and directors receive no salary beyond that which they receive

as employees of Maersk, Inc. Third, Exporter appears to follow no corporate formalities. Fourth, Exporter appears to maintain no separate accounting system. Maersk prepares and administers Exporter's payroll. Maersk also financed Exporter's ability to set up for its operations. Finally, Exporter shares Maersk's accounting department and financial records. Fifth, Maersk appears to exercise complete control over Exporter's general policy. William Simpkins, Maersk's Vice President for Finance, testified in deposition that Maersk "controls" Exporter, dictates Exporter's policies and standards, and controls Exporter's officers and directors. Sixth, and finally, Maersk appears to exercise complete control over Exporter's daily operations. Maersk prepares and administers Exporter's payroll, provides Exporter's insurance, handles claims made against Exporter, hires and trains all employees for Exporter, pays for prospective employees' physical examinations, and makes all employment termination decisions for Exporter.

The Fifth Circuit in *Dickson* suggested that a stronger showing under the *Hargrave* factors should be required to determine alter ego status where two corporate entities have a sibling rather than parent-subsidiary relationship. *See Dickson,* 179 F.3d at 338–39. Here, despite the fact that Maersk no longer owns stock in Exporter, Plaintiffs have produced evidence that Maersk nonetheless dominates virtually every aspect of its former subsidiary's operations. Accordingly, the Court concludes that for the purpose of personal jurisdiction, Exporter is the alter ego of Maersk.[2] Because Maersk has conceded that it is subject to the personal jurisdiction of this Court, Defendant Exporter's

Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED.**

### III. CONCLUSION

For the reasons set forth above, Defendant Exporter's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**

---

**2.** In the Fifth Circuit, the alter ego test for purposes of attributing contacts for personal jurisdiction is less stringent than that for attributing liability. *See Stuart v. Spademan,* 772 F.2d, 1185, 1198 n. 12 (5th Cir.1985) (*citing Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)); *Saktides v. Cooper,* 742 F.Supp. 382, 386 n. 4 (W.D.Tex.

1990) (*citing Marine Midland,* 664 F.2d at 902; *Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1348 (E.D.N.Y.1981)) (noting a difference between the rules governing personal jurisdiction and those governing substantive tort liability with respect to corporate officers acting in a corporate capacity).