**Fred FREUDENSPRUNG, Plaintiff,**

**v.**

**OFFSHORE TECHNICAL SERVICES, INC., Willbros Group, Inc., Willbros International, Inc., Willbros West Africa, Inc., Willbros USA, Inc., and Willbros Engineers, Inc., Defendants.**

**No. CIV.A.G–01–603.**

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 19, 2002.

Russell G Burwell, Burwell Burwell & Nebout, Texas City, Robert Blake Brunkenhoefer, Brunkenhoefer & Hall PC, Cor-

pus Christi, for Fred Freudensprung, plaintiffs.

Michael Aaron Varner, Brown Sims PC, Michael D Murphy, Hays McConn et al, Houston, for Offshore Technical Services Inc, Willbros USA Inc, Willbros Engineers Inc, Willbros International Inc, Willbros West Africa Inc, Wilbros Group Inc, defendants.

### ORDER GRANTING DEFENDANT WILLBROS WEST AFRICA, INC.'S MOTION TO DISMISS

KENT, District Judge.

This is an admiralty lawsuit wherein Plaintiff Fred Freudensprung ("Freudensprung") seeks to recover damages for injuries sustained while working aboard a derrick barge off the coast of Lagos, Nigeria. Now, Defendant Willbros West Africa, Inc. ("WWA") asks this Court to dismiss Plaintiff's action for lack of personal jurisdiction and insufficient service of process. For the reasons articulated below, Defendant's Motion to Dismiss is hereby **GRANTED.**

### I.

The following set of facts give rise to the present lawsuit. On May 24, 2000, Defendants Offshore Technical Services, Inc. ("OTSI") and WWA entered into an Offshore Personnel Supply Agreement ("the OPSA" or "the Agreement") whereby OTSI would supply technical and supervision/craft personnel to WWA to perform WWA's contracts in Africa relating to marine operations, fabrication, inspection, installation, hook-up, and pipeline work. Under the terms of the Agreement, WWA would pay OTSI certain stipulated daily rates for each worker provided, but all personnel supplied by OTSI would remain employees of OTSI while assigned to WWA.

Plaintiff avers that he was retained by OTSI to work as a barge leadman aboard a derrick barge owned and operated by WWA pursuant to the OPSA. During the course of his assignment with WWA, Plaintiff was responsible for assisting in the set up of a Single Point Mooring ("SPM") near Lagos, Nigeria. Specifically, on or about July 28, 2000, Plaintiff alleges that he was working as a member of the crew charged with connecting large chains to the ocean floor in an effort to secure the position of the SPM. These chains were several hundred feet in length, and each chain link weighed in excess of two hundred pounds. At the time of the accident, Plaintiff and other crewmembers were in the process of placing the second set of approximately twelve chains on the ocean floor. These chains were laid over the side of the barge, and then gradually lowered by winches and cables. While talking on a two-way handheld radio with crewmembers located in the barge tower, a cable on the stern winch broke loose, ostensibly causing a runaway chain to strike Plaintiff from behind. As a result of this incident, Plaintiff sustained painful and permanent physical and mental injuries, rendering him unable to work.

On October 4, 2001, Plaintiff brought this action against Defendants OTSI, Willbros USA, Inc., Willbros Engineers, Inc., Willbros International, Inc., and WWA, alleging causes of action under the Jones Act and the General Maritime Law of the United States. On December 21, 2001, Defendant WWA filed a Motion to Dismiss Plaintiff's lawsuit for lack of personal jurisdiction and insufficient service of process. Finally, on January 21, 2002, Plaintiff filed his First Amended Original Complaint, adding Willbros Group, Inc. ("WG") as a Defendant, and modifying the place where service may be properly effected upon WWA. As indicated by the analysis below, however, Defendant WG, the alleged parent corporation of WWA, has not similarly moved to dismiss Plaintiff's claims for lack

of personal jurisdiction (or on the basis of any other defect), and the Court therefore will not address the jurisdictional status of WG at this time.

## II.

■■■ Defendant WWA seeks to dismiss this action for lack of personal jurisdiction and insufficient service of process, as authorized by Fed.R.Civ.P. 12(b)(2) & 12(b)(5) respectively. Because the Court finds that personal jurisdiction is clearly lacking over WWA, the Court need only address the issue of personal jurisdiction in granting Defendant's Motion. In federal court, personal jurisdiction over a non-resident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.,* 234 F.3d 863, 869 (5th Cir.2000); *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993).

■■■ Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that a defendant has "minimum contacts" with the state of Texas. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring a defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston Gas Turbines,* 9 F.3d at 418. The minimum contacts aspect of due process can be satisfied either by finding "specific jurisdiction" or "general jurisdiction." *See Wilson,* 20 F.3d at 647. If the conduct of a defendant supports personal jurisdiction and is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *See Ruston Gas Turbines,* 9 F.3d at 418–19. The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil . . . ."). Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer "general jurisdiction." However, these general contacts with the forum state must be both "continuous and systematic" and "substantial." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

■ Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson*, 20 F.3d at 648. However, a prima facie showing of jurisdiction is sufficient, and the plaintiff's allegations in this regard are to be taken as true unless controverted, with any conflicts to be resolved in the plaintiff's favor. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990).

## III.

■ Defendant contends in its Motion to Dismiss that this Court lacks *in personam* jurisdiction over it. Specifically, WWA alleges that it is a Panamanian corporation with its principal place of business in the Republic of Panama; that it is a wholly-owned subsidiary of Willbros International, Inc., also a Panamanian corporation; and that it does not have the necessary minimum contacts with the state of Texas to invoke personal jurisdiction. In his Response, Freudensprung argues that WWA's contacts with Texas are sufficient to justify the assertion of both specific and general personal jurisdiction. Based on Fifth Circuit authority directly contravening this proposition, however, the Court respectfully disagrees on both counts.

■ With regard to specific jurisdiction, Plaintiff maintains that WWA has purposefully availed itself of the benefits and protections of the state of Texas principally by: (1) contracting with OTSI and Plaintiff, both Texas residents; (2) contemplating the arbitration of disputes arising under the contract in Houston, Texas; (3) initiating and contemplating a long term business arrangement with OTSI; (4) engaging in communications with OTSI in developing and carrying out the contract; and (5) wiring payments to OTSI in Texas. At the outset, the Court rejects the notion that WWA entered into an express or implied employment contract with Plaintiff. Under the express terms of the OPSA, all personnel supplied by OTSI remained employees of OTSI while assigned to WWA, such that OTSI was exclusively responsible for the payment of all salaries, benefits, and remuneration to such personnel, and WWA was consequently absolved of the normal liabilities flowing to an employer. Based on the plain language of the OPSA, and because the pleadings do not otherwise substantiate Plaintiff's argument, the Court does not believe that WWA entered into an express or implied employment contract with Freudensprung.

■ Notwithstanding this fact, even assuming that WWA contracted with both OTSI and Plaintiff, these contacts, viewed in conjunction with the other contacts alleged by Freudensprung, do not constitute the minimum contacts necessary to comport with constitutional due process. First, it is well established that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.1986) (citations omitted); *see also Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. When a nonresident defendant contracts with a forum resident, courts look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether the defendant has purposefully established minimum contacts with the forum. *See, e.g., Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985). Furthermore, the Fifth Circuit has repeatedly held that the combination of mailing payments to the forum state, engaging in communications surrounding the execution and performance of a contract, and the fact that a nonresident enters into a contract with a resident are insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a

nonresident defendant. *See, e.g., Holt,* 801 F.2d at 778 (no specific jurisdiction where nonresident defendant entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas); *Spademan,* 772 F.2d at 1193–94 (no minimum contacts where nonresident defendant contracted with Texas residents, shipped products to Texas, directed letters and telephone calls into Texas, and anticipated the application of Texas law).

■ In the case at hand, Plaintiff has not alleged contacts sufficient to warrant the assertion of specific personal jurisdiction. By contracting with OTSI and Plaintiff, engaging in communications with OTSI in developing and carrying out the contract, and wiring money to OTSI in Texas, WWA has acted no differently than the nonresident defendants in *Holt* and *Spademan,* over whom the Fifth Circuit declined to exercise *in personam* jurisdiction. The only other two contacts averred by Freudensprung—WWA's contemplation of arbitrating disputes arising under the contract in Texas, and WWA's initiation and contemplation of a long term business arrangement with OTSI—are similarly inadequate to demonstrate purposeful availment. The Court recognizes that an arbitration or forum selection clause may, under certain circumstances, alter an otherwise decisive jurisdictional analysis. *See, e.g., PaineWebber Inc. v. Chase Manhattan Private Bank,* 260 F.3d 453 (5th Cir.2001) ("An agreement to arbitrate is one such 'legal arrangement' by which a litigant may impliedly consent to personal jurisdiction."); *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 206–07 (5th Cir.1996) (determining that a provision resembling a choice of forum clause whereby defendant expressly acknowledged that it was subject to suit in any state where labor was performed or materials furnished "should

have made [defendant] aware that it was subject to being haled into a Texas court"). However, this principle does not apply to the present case. Here, the purported arbitration provision contemplates only the arbitration of disputes between WWA and OTSI in Texas, *not* the arbitration of disputes between WWA and Plaintiff. Thus, even if WWA had expected to arbitrate disputes between itself and OTSI in Texas, it cannot concomitantly be concluded that WWA reasonably anticipated being haled into a Texas court to defend a lawsuit brought by Plaintiff or any other person who was *not* a party to the OPSA. As such, WWA did not impliedly consent to the jurisdiction of the Texas courts for the adjudication of this particular dispute, and the arbitration provision cited by Plaintiff is wholly unimpressive upon the instant jurisdictional analysis.

■ The same can be said of Plaintiff's contention that WWA initiated and contemplated a long term business arrangement with OTSI. Even if WWA had foreseen a long term business relationship with OTSI under the terms of the OPSA, the significance of this element is severely diminished by the fact that the material portions of the OPSA were to be performed in Africa, clearly outside of the state of Texas. *See, e.g., Holt,* 801 F.2d at 778 (concluding that the significance of the contractual relationship between the nonresident defendant and the Texas plaintiff was undermined by the fact that the performance of the contract was centered in Oklahoma rather than Texas). At its core, the primary purpose of the OPSA was to supply technical and supervision/craft personnel to WWA to perform WWA's contracts *in Africa* relating to marine operations, fabrication, inspection, installation, hook-up, and pipeline work. Given that the performance of the OPSA was expected to take place on another continent,

WWA's mere initiation and contemplation of a long term business arrangement with OTSI is insufficient to constitute purposeful availment of the benefits and protections of Texas law. Accordingly, none of the specific contacts alleged by Freudensprung are sufficient to warrant the assertion of personal jurisdiction over WWA.

 Having determined that specific jurisdiction does not exist, the Court proceeds to consider whether the exercise of general jurisdiction is proper based on WWA's unrelated contacts with the forum. Unlike the specific jurisdiction analysis, which focuses on the defendant in relation to the cause of action and forum, the general jurisdiction inquiry concentrates exclusively on whether the defendant's unrelated contacts with the forum are sufficiently "continuous and systematic" and "substantial" to satisfy due process requirements. *Helicopteros*, 466 U.S. 408 at 414, 417, 104 S.Ct. 1868 at 1872–73, 80 L.Ed.2d 404. In the instant case, Plaintiff does not allege any unrelated contacts made by WWA itself. Rather, Plaintiff points to the various contacts of WG, the supposed parent corporation of WWA, to buttress the assertion of general jurisdiction. These contacts include: (1) WG is traded on the New York Stock Exchange under the ticker symbol "WG"; (2) WG's principal place of business is in Houston, Texas; (3) WG's financial news and company business articles are issued from Houston, Texas; (4) WG's conference calls are originated from Houston, Texas; (5) WG's corporate officers reside in Houston, Texas; (6) WG's corporate board meetings occur in Houston, Texas; and (7) one-third of WG's total revenue is derived from the United States. Although some of the above facts are contested by WWA, the Court accepts the veracity of these allegations for present purposes only. However, even assuming that WG is the parent corporation of WWA (contrary to WWA's assertion in its Motion to Dismiss), and that WG has engaged in all of the contacts listed above, the Court can conceive of no basis whatsoever for ascribing WG's contacts with Texas to its subsidiary, WWA.

 In *Hargrave v. Fibreboard Corporation*, the Fifth Circuit established that "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." 710 F.2d 1154, 1159 (5th Cir. 1983) (citation omitted) (examining the specific question of whether the activities of a subsidiary corporation would import personal jurisdiction to a nonresident parent corporation). The *Hargrave* court then qualified this general rule by stating that "so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Id.* at 1160 (interpreting the Supreme Court's holding in *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925)). In determining whether a parent corporation is separate and distinct from its subsidiary for the purposes of a jurisdictional inquiry, the Fifth Circuit set forth several factors to be analyzed: (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters for each entity; (3) the sharing of common officers and directors; (4) the observance of corporate formalities; (5) the maintenance of separate accounting systems; (6) the parent corporation's exercise of complete authority over the general policy of the subsidiary; and (7) the subsidiary's exercise of complete authority over its daily operations. *Id.* at 1160. In the case at hand, Plaintiff vehemently con-

tends that WWA is indistinguishable from its parent, WG. However, Plaintiff offers only two facts to support this lofty claim—that WG files a consolidated financial statement that includes the financial information of WWA, and that WG possibly files a consolidated tax return that reflects the tax information of WWA. Under the *Hargrave* test, Plaintiff's vague assertions are clearly inadequate to prove that WWA and WG are indistinct entities. Importantly, Plaintiff does not aver any facts, much less proffer any evidence, demonstrating that WG owns any amount of stock of WWA, that WG shares corporate headquarters with WWA, that WG shares common officers and directors with WWA; that WG disregards corporate formalities with WWA; that WG maintains the same accounting system as WWA; nor that WG exercises any degree of authority over the general policy or daily operations of WWA. Although Plaintiff implies in his Response that WG and WWA share identical corporate headquarters and officers and directors, these statements are nothing more than conclusory and unsubstantiated allegations. Based on this dire paucity of information, the Court concludes that Plaintiff has failed to meet his burden of showing that WG exercises a sufficient degree of control over WWA to justify the assertion of personal jurisdiction over WWA via the contacts of WG. Because WWA does not have the necessary minimum contacts with the state of Texas to invoke personal jurisdiction, the Court need not evaluate whether the exercise of personal jurisdiction over WWA offends traditional notions of fair play and substantial justice.

### IV.

After careful consideration of WWA's contacts with the state of Texas, the Court finds that it does not possess either specific or general *in personam* jurisdiction over Defendant WWA. The Court accordingly hereby **GRANTS** Defendant's Motion to Dismiss on the specific ground that it lacks personal jurisdiction over WWA, and hereby **DISMISSES WITHOUT PREJUDICE** any and all of Plaintiff's claims against Defendant WWA *only*. Plaintiff is free, of course, to reassert these claims in a court of proper jurisdiction and venue, during the applicable limitations period. Plaintiff's remaining causes of action against all other Defendants remain intact pending further Order of the Court. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**