Pete SMIRCH and Steve Koerulja, Individually, and Two Didos, Inc.

v.

ALLIED SHIPYARD, INC.

No. Civ.A. G–01–057.

United States District Court, S.D. Texas, Galveston Division.

Sept. 21, 2001.

---

Jimmy Williamson, Williamson & Sears, Houston, TX, for plaintiffs.

G. Byron Sims, Brown Sims PC, Houston, TX, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO TRANSFER VENUE

KENT, District Judge.

Plaintiffs bring this admiralty suit in contract and tort seeking damages for breach of maritime contract, breach of warranty of workmanlike performance, negligent misrepresentation, and negligence. Now before the Court are Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Venue. For the reasons elucidated below, Defendant's Motions are **GRANTED.**

### I. BACKGROUND

Plaintiffs Pete Smirch and Steve Koerulja are Texas residents who own and operate a shrimping vessel named "Two Didos" (formerly called "Audrey G"). Defendant Allied Shipyard, Inc. ("Allied") is a Louisiana ship repair corporation, with its principal place of business in LaRose, Louisiana.

Plaintiffs allege the following set of facts. On or after May 24, 2000, Plaintiffs entered into a contractual agreement with Allied for the inspection and repair of Two Didos. Under the terms of the maritime agreement, Allied agreed to perform various inspection and repair services, including steering repairs. On or about July 6, 2000, Plaintiffs took delivery of Two Didos, based on Allied's representations that the stipulated repairs had been completed and the vessel rendered seaworthy. Shortly after placing the vessel back into service, however, the vessel's steering mechanism failed, causing it to run aground in Surfside, Texas. As a result of the grounding,

Plaintiffs claim to have incurred damages totaling nearly a quarter of a million dollars. Plaintiffs filed suit in this Court on January 29, 2001, alleging that Allied's faulty repair work caused the vessel's grounding and subsequent damages.

Defendant Allied propounds two procedural challenges to Plaintiffs' suit, in the form of a Motion to Dismiss for Lack of Personal Jurisdiction, and Motion to Transfer Venue. In the first instance, Allied contends that its contacts with Texas are insufficient to invoke a proper assertion of personal jurisdiction, thereby warranting a dismissal of Plaintiffs' claims. In the alternative, Allied moves to transfer venue to the United States District Court for the Eastern District of Louisiana.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant seeks to dismiss Plaintiffs' claims for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). In federal court, personal jurisdiction over a nonresident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.,* 234 F.3d 863, 869 (5th Cir. 2000); *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex.Civ.Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due-process inquiry. *See Ruston Gas*

*Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993).

Whether the exercise of personal jurisdiction over Defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendants have "minimum contacts" with Texas. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston Gas Turbines,* 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding specific jurisdiction or general jurisdiction. *See Wilson,* 20 F.3d at 647. If the conduct of a defendant that supports personal jurisdiction is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *See Ruston Gas Turbines,* 9 F.3d at 418–19. The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot

upon the forum state's soil....")." Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer general jurisdiction. However, these contacts with the foreign state must be both "continuous and systematic" and "substantial." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson,* 20 F.3d at 648. However, a prima facie showing of jurisdiction is sufficient, and the plaintiff's allegations in this regard are to be taken as true unless controverted, with any conflicts to be resolved in the plaintiff's favor. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990).

### 1. Minimum Contacts

Plaintiffs argue that Allied's contacts with Texas are sufficient to support the assertion of both specific and general *in personam* jurisdiction. Based on Fifth Circuit precedent directly contravening Plaintiffs' propositions, however, the Court disagrees on both counts.

Regarding specific jurisdiction, Plaintiffs contend that the following actions taken by Allied adequately confer personal jurisdiction over Defendant: (1) contracting with Texas residents; (2) sending a repair bill to Plaintiffs in Texas; (3) placing telephone calls to Plaintiffs in Texas; (4) faxing a pre-invoice and fi-

nal invoice report to Plaintiffs in Texas; and (5) repairing a vessel that it knew would be used in Texas. Although personal jurisdiction analyses are often murky, this is not particularly true in the present case. Controlling Fifth Circuit authority strongly indicates that the types of contacts alleged above, even when viewed cumulatively, do not constitute the minimum contacts necessary to comport with constitutional due process. In *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986), the Fifth Circuit confronted the issue of specific jurisdiction in a factual context strikingly similar to the instant one. The nonresident defendant in *Holt* had entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas. *Id.* at 778. Despite these direct contacts, the Fifth Circuit concluded that these actions were insufficient to support an exercise of specific jurisdiction over the defendant in Texas. *Id.* In reasoning its judgment, the *Holt* court reiterated several longstanding Fifth Circuit propositions. First, the court observed that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Id.* (citations omitted); *see also Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. Furthermore, the significance of the contract in *Holt* was diminished by a choice of law provision specifying that Oklahoma law would govern the contract, and the fact that performance of the contract was centered in Oklahoma rather than Texas.[1] Be-

---

1. When a nonresident defendant contracts with a forum resident, courts look to a variety of factors to determine whether the defendant purposefully established minimum contacts with the forum state; these factors include prior negotiations, contemplated future consequences, terms of the contract, and parties'

actual course of dealing. *See, e.g., Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.,* 785 F.2d 1330, 1334 (5th Cir. 1986). The *Holt* court did not undergo an extensive analysis of these factors, but merely highlighted those factors mitigating a finding of purposeful availment.

cause the material performance of the contract was based in Oklahoma, the court additionally concluded that mailing items to the forum state did "not weigh heavily" in the jurisdictional equation. *Id.* (citations omitted). Finally, the court held that the exchange of communications "in the course of developing and carrying out the contract" was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law because such communications "rested on nothing but the 'the mere fortuity' that the plaintiff was a Texas resident." *Id.* (quoting *Patterson v. Dietze, Inc.,* 764 F.2d 1145, 1147 (5th Cir.1985)).

Plaintiffs in the instant case have alleged jurisdictional facts virtually identical to those in *Holt.* Although Allied may have contracted with Texas residents, and subsequently engaged in various types of communication with Plaintiffs in Texas, these actions are insufficient to justify the assertion of specific jurisdiction under a Fifth Circuit inquiry. Defendant contends, and Plaintiffs do not dispute, that Defendant did not solicit Plaintiffs' business; that the vessel was delivered to Louisiana for repairs; and that the repairs were performed wholly within the state of Louisiana. In the absence of any other evidence, this Court would be remiss to conclude that Defendant purposefully established minimum contacts with Texas via the ship repair contract. Allied's various communications with Plaintiffs in Texas similarly fail to engender *in personam* jurisdiction. Nothing in the record before the Court

indicates that these communications occurred other than in the course of developing and carrying out the contract. As such, Allied's communications, although directed into Texas, are merely fortuitous actions that do not give rise to specific jurisdiction.[2]

■ The only jurisdictional fact not immediately disposed of by *Holt* is the allegation that Allied was aware of Plaintiffs' intention to operate Two Didos in Texas following the completion of the repairs. Although the foreseeable effects of a tort are to be assessed as part of the minimum contacts analysis, the Fifth Circuit has unequivocally expressed that "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska,* 195 F.3d at 212 (citing *Jobe v. ATR Marketing, Inc.,* 87 F.3d 751, 753–54 (5th Cir.1996)); *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763 (5th Cir. 1988). Under this directive, courts have exercised personal jurisdiction in limited circumstances, such as where a defendant directs intentional tortious conduct into a forum, or places a defective product into the stream of commerce with the knowledge it will be distributed in the forum state. *See, e.g., Calder v. Jones,* 465 U.S. 783, 788–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984) (finding minimum contacts in a libel action against two nonresident newspapermen because defendants were "not charged with mere untargeted negligence," but "intentional, and allegedly

---

**2.** The Court recognizes that in some instances, communications directed into a forum standing alone will support a finding of minimum contacts. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir.1999) (finding specific jurisdiction where the fraudulent content of defendant's communications directly gave rise to plaintiff's fraud claim). In the present suit, however, Plaintiffs have not brought an intentional tort cause of action, nor averred that Defendant's communications contained the alleged negligent misrepresentations. Furthermore, because Plaintiffs have not raised this argument in their brief, the Court finds it unnecessary to explore this line of analysis further.

tortious, actions [that] were expressly aimed" at the forum state); *Ruston Gas Turbines,* 9 F.3d at 420–21 (asserting specific jurisdiction over parts manufacturer that intentionally placed its product into the stream of commerce by shipping them to the forum state); *Bullion,* 895 F.2d at 217–18 (concluding that personal jurisdiction was fair and reasonable where physician directly shipped harmful drugs to the resident plaintiff). However, personal jurisdiction will not lie over a defendant who does not purposefully direct his actions into the forum, but merely foresees that the adverse consequences of his acts will be felt in the forum state. *See, e.g., Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869 (5th Cir.2001) (refusing to exercise personal jurisdiction where defendant knew its tortious interference with financing agreements would harm plaintiffs in Texas, but did not otherwise direct actions toward the forum); *Southmark,* 851 F.2d at 772–73 (determining that even if defendants were aware that the negative effects of its stock purchase would be felt by plaintiff in Texas, plaintiff's residency was a "mere fortuity" that did not provide an adequate basis for the assertion of specific jurisdiction).

Plaintiffs allege in the present case, and the Court assumes, that Allied was aware that Plaintiffs would be operating Two Didos as a shrimping vessel in Texas. However, even if Allied did foresee the location of Plaintiffs' injuries, Plaintiffs have not pled facts demonstrating that Allied otherwise purposefully directed acts towards Texas. As explicated above, Allied's other contacts with Texas stem from the mere fortuity that Plaintiffs reside in Texas, and therefore do not represent acts of purposeful availment. In addition, this case does not fall within extant categories of cases premising jurisdiction on foreseeable effects. Plaintiffs do not allege intentional tortious acts, nor do their claims properly invoke jurisdiction under a stream of commerce theory. Allied did not manufacture a defective product and then place it into the stream of commerce with the knowledge it would be distributed in Texas. Allied merely repaired a vessel that was owned by Texas residents and intended for use in Texas. Even if Allied's ship repairs could be analogized to a defective product, it cannot concomitantly be said that Allied placed its product into the stream of commerce headed for Texas. Based on the record, it was Plaintiffs who sought Defendant's services in Louisiana; it was Plaintiffs who retrieved the vessel following completion of the ship repairs in Louisiana; and it was Plaintiffs who brought the vessel back to Texas. Thus, that Plaintiffs sustained injuries in Texas as a result of Defendant's allegedly negligent ship repairs relies on the mere fortuity that Plaintiffs reside and work in Texas, not the fact that Defendant directed specific acts toward the state of Texas. Since Defendant's specific contacts with Texas do not constitute the minimum contacts necessary to satisfy due process, this Court does not possess specific *in personam* jurisdiction over Defendant.

■ Having determined that specific jurisdiction does not exist, the Court proceeds to consider whether the exercise of general jurisdiction is proper based on Allied's unrelated contacts. Unlike the specific jurisdiction analysis, which focuses on the defendant in relation to the cause of action and forum, the general jurisdiction inquiry concentrates exclusively on whether the defendant's unrelated contacts with the forum are sufficiently "continuous and systematic" and "substantial" to satisfy due process requirements. *Helicopteros,* 466 U.S. 408 at 414, 417, 104 S.Ct. at 1872–73. Plaintiffs point to the following facts to buttress the assertion of general jurisdiction: (1) Gavin Callais, owner of Allied,

stated during his deposition that Allied's contacts with Texas have been "systematic"; (2) Allied's client list contains over fifty different customers with Texas addresses; (3) Ken Plaisance, Allied's operations manager, traveled to Texas on at least two occasions, during which time he visited, solicited and collected money from Allied customers; (4) Allied regularly mails pre-invoice and invoice reports and receipts to its clients in Texas, and accepts and negotiates checks drawn on their Texas banks; (5) Allied owns at least one share of stock in two Texas companies; and (6) Allied has previously been sued or defended lawsuits in Texas.

■ The law of the Fifth Circuit requires this Court to examine Allied's contacts *in toto* to determine whether they constitute the kind of continuous and systematic contacts necessary to satisfy due process. *Holt,* 801 F.2d at 779. Even when viewed cumulatively, however, Allied's unrelated contacts with the forum are clearly not demonstrative of a continuous and systematic presence in Texas. The Supreme Court and Fifth Circuit have consistently denied general personal jurisdiction in cases where plaintiffs have alleged contacts similar to, or more substantial than, those pled in the instant lawsuit. In *Helicopteros,* the defendant corporation had engaged in numerous contacts with the forum state of Texas, including sending its chief executive officer to Texas for a contract negotiation session; accepting into its New York bank account checks drawn from a Texas bank; purchasing helicopters and other equipment and services from a Texas corporation at regular intervals; and training pilots and other personnel at a Texas facility. 466 U.S. at 416, 104 S.Ct. at 1873. Notwithstanding this broad array of contacts, the Supreme Court refused to assert personal jurisdiction over the defendant, reasoning that

drawing checks on a Texas bank is of "negligible significance," and "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id.,* 466 U.S. at 416–17, 104 S.Ct. at 1873–74. In rigorously applying *Helicopteros* to personal jurisdiction suits in Texas, the Fifth Circuit has even denied jurisdiction where defendant corporations have procured hundreds of millions of dollars in revenue from Texas customers. *See, e.g., Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 717–18 (5th Cir.1999) (finding no general jurisdiction even though defendant's "revenues derived from Texas residents totaled millions of dollars a month."); *Bearry, et al. v. Beech Aircraft Corp.,* 818 F.2d 370, 372–76 (5th Cir.1987) (concluding that the flow of $250 million worth of defendant's products via Texas dealers did "not create a general presence in that state"). In these cases, the courts have meticulously distinguished between continuous and systematic contacts that constitute "doing business *in* Texas" (and thereby conferring personal jurisdiction), and those that merely embody "doing business *with* Texas." *Access Telecom,* 197 F.3d at 717 (determining that defendant's leasing of telephone circuits and other activities in Texas were aimed solely at providing and profiting from long distance communication in Mexico, and therefore were properly characterized as "doing business *with* Texas"); *see also, e.g., Bearry,* 818 F.2d at 375–76 (allowing defendant to evade personal jurisdiction by executing its sales contracts in Kansas, even though defendant's products were injected into the Texas market via these contracts). In short, a nonresident defendant might yield significant revenue from Texas clients, but fall short of the court's jurisdiction by not actually conducting business within the state.

In the case before us, Defendant's activities do not constitute the kind of continu-

ous, systematic and substantial contacts necessary for the exercise of general jurisdiction. Allied is a Louisiana corporation with its principal place of business in La-Rose, Louisiana. Allied has no property, offices or employees in Texas. Allied does not render ship repair services in Texas, nor does it advertise in Texas. Although Plaintiffs emphasize the fact that Allied's client list contains the names of more than fifty different customers with Texas addresses, this list of names standing actually alone provides no indication of whether or not Allied conducted business in Texas. Plaintiffs do not aver anywhere in the record that Allied executed contracts in Texas, performed services in Texas, delivered vessels in Texas, or otherwise conducted business in Texas. Absent these types of corroborating facts, Allied's client list is simply a list, and Plaintiffs' assertion that Allied conducts business in Texas is nothing more than a vague claim. Based on the record, and bearing in mind that Plaintiffs bear the burden of presenting a prima facie case of jurisdiction, the Court can only assume that Allied performs all of its services in Louisiana, and does not otherwise conduct business in the state of Texas. That Allied may turn a profit from its Texas clients is, by itself, an ancillary and inconsequential factor in the jurisdictional analysis, as demonstrated by a myriad of Fifth Circuit cases. Finally, Allied's remaining contacts with Texas are too insubstantial to satisfy the formidable threshold set forth in *Helicopteros*. Two isolated trips to Texas, various mailings to and from Texas, ownership of a few shares of stock in two Texas companies, and some vague recollection of being sued in Texas once before, will not give rise to an assertion of general jurisdiction under the case law of this circuit and the Supreme Court.

### 2. Fair Play & Substantial Justice

■ Even if the Court were to conclude that minimum contacts existed, it would nonetheless grant Defendant's motion. Irrespective of the minimum contacts analysis, the exercise of personal jurisdiction over a nonresident defendant will fail to satisfy due process requirements if it offends "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158; *Wilson*, 20 F.3d at 647. The relationship between the defendant and the forum state must be such that it is reasonable to require the corporation to defend the particular suit. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). In determining whether the exercise of jurisdiction is consistent with notions of fair play and substantial justice, the Court evaluates five factors: the defendant's burden, the forum state's interest in resolving the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65.

■ The Court concludes that it would be unreasonable to require Allied to litigate this dispute in Texas. Plaintiffs' injuries allegedly arose from the activities of a Louisiana entity occurring exclusively in Louisiana. According to the record, the alleged contract, warranties, negligent misrepresentations, and negligent repairs, all originated and concluded in Louisiana. Although some witnesses (particularly those aboard the vessel at the time of its grounding) are bound to reside in Texas, the vast majority of persons with knowledge of the facts and possession of the

relevant documents are likely to be in Louisiana. Finally, while the Court recognizes its interest in adjudicating claims brought by Texas residents, other factors outweigh. Given the location of relevant events, witnesses and documents, the interests of the interstate judicial system would be much better served by allowing this case to proceed in an alternative forum.

Thus, after careful consideration of Allied's contacts with Texas and the due process ramifications of subjecting Allied to suit in Texas, the Court finds that neither specific nor general *in personam* jurisdiction exist over Defendant. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **GRANTED.**

**B. Motion to Transfer Venue**

Defendant alternatively asks this Court to transfer Plaintiffs' action to the United States District Court for the Eastern District of Louisiana based on the impropriety of venue under 28 U.S.C. § 1391, and the Court's discretionary venue power granted by 28 U.S.C. § 1404(a).[3] Because the Court concludes that venue should be transferred pursuant to § 1404(a), it does not reach the issues raised under § 1391.

■ Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought." 28 U.S.C. § 1404(a). Defendant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed.").

Of course, whether to transfer the case rests within the sound discretion of the Court, and its determination is reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion." (citation omitted)); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974) (declaring that whether to transfer venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

■ The Court weighs the following factors when deciding whether a venue

---

**3.** It should be noted that Allied's Motion to Transfer Venue appears to be misnamed. In support of its motion, Allied argues that venue is *improper* in the Southern District of Texas, and only conclusorily alleges in a solitary sentence that venue should be transferred pursuant to 28 U.S.C. § 1404(a). Allied's argument should have been characterized as a Motion to Dismiss for Improper Venue. If Allied was also interested in seeking a discretionary venue transfer, it should have filed a proper Motion to Transfer Venue discussing

the relevant factors: availability and convenience of witnesses and parties, location of counsel, location of pertinent books and records, cost of obtaining attendance of witnesses and other trial expenses, place of the alleged wrong, possibility of delay and prejudice if transfer is granted, and plaintiff's choice of forum. Notwithstanding Allied's mischaracterized motion, the Court will treat the issues typically associated with a Motion to Transfer Venue.

transfer is warranted: the availability and convenience of witnesses and parties, the location of counsel, the location of pertinent books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1065 (S.D.Tex.1996) (Kent, J.); *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993) (Kent, J.); *Continental Airlines Inc. v. American Airlines Inc.*, 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (Kent, J.) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)).

Although the record is devoid of facts specifically impinging upon the venue question, the Court concludes on the available facts that venue should be transferred to the Eastern District of Louisiana for the convenience of the parties and witnesses, and in the interest of justice. The first and most salient factor, the availability and convenience of witnesses and parties, weighs in favor of transfer. As discussed previously, most of the fact witnesses are likely to reside in Louisiana since the overwhelming number of events giving rise to Plaintiffs' claims occurred there. Although Plaintiffs' damage witnesses and experts in Texas may be inconvenienced by a transfer, the significance of this fact is diluted by the inconvenience that would result to many others absent transfer. Since Plaintiffs reside in Texas, and Defendant in Louisiana, the availability and convenience of the parties does not factor negatively or positively in this analysis. Second, although both parties have retained counsel in Texas, the location of counsel is afforded little or no consideration. Third, neither party has proffered information regarding the location of relevant books and records. Based on the fact that the contract was executed and performed in Louisiana, however, the Court presumes that any relevant records pertaining to the contract or ship repair work can be found on Defendant's premises. The same reasoning applies to prospective trial expenses. Because the vast majority of potential witnesses and documents are most likely located in Louisiana, it can reasonably be deduced that litigating the dispute in Louisiana would diminish trial costs. Fifth, the place of the alleged wrong is generally considered a significant factor. In this case, Plaintiffs have felt the alleged injuries in the state of Texas, but the actual commission of the wrongful acts took place in Louisiana. As such, the Court has only a passing interest in this dispute. Regarding the final two factors, the Court recognizes that Plaintiffs will lose the benefit of this Court's expediency if a transfer is granted, and that a plaintiff's choice of forum should be accorded great deference. While the Court appreciates Plaintiffs' decision to file their claims in this forum and regrets that Plaintiffs will not reap the rewards of this Court's shorter trial track, these elements are outweighed by the previous five factors. Thus, in light of these considerations, the Court concludes that transfer is necessary for the convenience of the parties and witnesses, and in the interest of justice. The Court notes that it upsets Plaintiffs' forum choice only to avoid the substantial inconvenience that Defendant would suffer from litigating this matter in Texas rather than Louisiana. Defendant's Motion to Transfer Venue is therefore **GRANTED.**

### IV. CONCLUSION

For the reasons set forth in detail above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, and Motion to Transfer Venue are **GRANTED.** The

case is hereby **TRANSFERRED** to the United States District Court for the Eastern District of Louisiana, New Orleans Division. Furthermore, Plaintiffs' request for additional time to conduct discovery on these matters is **DENIED,** particularly in light of the numerous extensions already granted to both parties. Plaintiffs' further request for an oral hearing is **DENIED** as moot, with the Court stressing that any information relevant to these motions should have been included in counsels' briefs. Each party is to bear its own cost in the matter incurred herein to date.

**IT IS SO ORDERED.**